IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MLEA, INC., as successor in interest to<br>Engineered Gas Systems, LLP and<br>Main Line Engineering Associates, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 02 CV 4393 |
| | : | |
| ATLANTIC RECYCLED RUBBER INC. | : | |
| | : | |
| and | : | |
| | : | |
| RECOVERY TECHNOLOGIES<br>GROUP INC. | : | |
| | : | |
| and | : | |
| | : | |
| CASELLA WASTE SYSTEMS, INC., | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

## PLAINTIFF'S PRETRIAL MEMORANDUM

Plaintiff, MLEA, Inc. ("MLEA"), submits this Pretrial Memorandum pursuant to Local

Rule of Civil Procedure 16.1(c). [1]

I.    Nature of the Action and Basis for Jurisdiction

In its Complaint, Plaintiff asserts claims for breach of contract, promissory estoppel and

unjust enrichment.  Plaintiff seeks money damages and will also seek a declaratory judgment under 28

U.S.C.§ 2201(a) that the Defendants are obligated to pay for items of equipment that Plaintiff ordered

---

[1] MLEA was incorporated on January 1, 2002.  Before that time, MLEA did business as Mainline Engineering Associates, a Pennsylvania partnership, and Engineered Gas Systems ("EGS"), a Pennsylvania Limited Liability Partnership.  Because this case spans the years 2000 to date, in certain documents, the Plaintiff may be referred to as Main Line Engineering, EGS, or MLEA.

on behalf of Defendants but for which Defendants have never paid in full. Defendant, Recovery Technologies Group, Inc. ("RTG"), has filed a Counterclaim on two $75,000 Promissory Notes executed by Plaintiff for a total of $150,000.

Jurisdiction is proper under 28 U.S.C. § 1332(a)(1) and (2), because the parties are corporate citizens of either different states or of a state and a foreign state, and the matter in controversy exceeds $75,000, exclusive of interest and costs. Venue is proper under 28 U.S.C. § 1391(a)(2).

II.    Statement of Facts

Plaintiff, MLEA, Inc., a Pennsylvania corporation located in Exton, is a small professional engineering company providing engineering, design and equipment supply services to commercial, institutional, governmental and professional clients. This is a collection action brought by Plaintiff against the Defendants, which are owners and/or operators of a cryogenic tire recycling facility located in Truro, Nova Scotia, Canada (the "Truro facility" or "the Plant"), for equipment that Plaintiff procured from vendors for the Defendants based upon Defendants' three purchase orders to Plaintiff, equipment that was to be installed in an on-site liquid nitrogen system at the Truro facility.[2]

The total cost of the equipment and engineering design/specification drawings ordered by the Defendants is over $2,000,000. Of that amount due and owing to Plaintiff, the Defendants have paid Plaintiff only $100,750 on the first purchase order they issued and $27,008 Defendants paid directly to one vendor. The equipment was ordered by the Plaintiff, in its name, for shipment to the Defendants, and because of Defendants' failure to pay Plaintiff is now at risk to those equipment vendors for the unpaid amounts. In addition, one vendor, ABB Power T&D, sued MLEA in the

---

[2] During the relevant time period, Recovery Technologies Group, Inc. was a wholly-owned subsidiary of Defendant Casella Waste Systems, Inc., and Defendant Atlantic Recycled Rubber Inc. was a wholly-owned indirect subsidiary of Recovery Technologies Group, Inc. All the key players for the Defendants were employees or agents of Casella Waste Systems, Inc. During the relevant time period, Plaintiff had dealings with and relied upon representations by each of those Defendants.

Chester County Court of Common Pleas, and Plaintiff was forced to settle that suit on an installment payment basis for $30,328. Plaintiff has paid all installments. Plaintiff also was sued by a second vendor, Generon IGS, a successor to Messer AGS, in the Chester County Court of Common Pleas, which case was tried in September 2003 and resulted in a judgment against Plaintiff for $861,527; of that amount $475,000 is for equipment Plaintiff ordered for Defendants. Plaintiff was also sued by a third equipment vendor, PSB Industries, Inc., in the Erie County Court of Common Pleas, which case recently settled on an installment basis for $40,000; Plaintiff has made the first installment of $5,000. The remaining unpaid equipment vendors are likely to sue Plaintiff for the equipment that it purchased on behalf of the Defendants, suits that will be the result of the Defendants' failure to pay in full for the equipment they directed Plaintiff to order for them. In addition, Plaintiff's professional reputation with those equipment vendors has been severely damaged.

On September 13, 2000, Defendant, James R. Anderson, President of Recovery Technologies, issued a letter of intent to buy a turnkey liquid nitrogen plant for the Truro facility from Messer AGS, a non-party to this litigation. Messer's September 13, 2000 turnkey quotation to Recovery Technologies for the design, equipment procurement, installation and startup of that plant was $4.9 million (Canadian), with the plant to be operational within 20-24 weeks. That letter of intent was subject to Recovery Technologies obtaining financing (in the form of a leasing arrangement) for the plant. On November 20, 2000, Messer wrote to Recovery Technologies and proposed that Recovery Technologies purchase certain "long lead and critical use items" in order to keep the project on schedule. Messer's proposal stated that once the financing was approved, Messer would repurchase those items (a feedbreaker, a transformer, and a cryogenic storage vessel for a total of $155,000) and that the cost of those items would be included in the financing that Recovery Technologies would use to pay for the entire plant. On December 1, 2000, Steven Benison, General Manager of Atlantic

Recycled, issued Purchase Order 715258 for the above-listed pieces of equipment, subject to the above-noted conditions.

In a December 11, 2000 letter from Messer to Bill Meckert, Recovery Technologies' Director of Engineering, Messer confirmed a telephone conversation with Meckert and proposed that certain additional "long lead" pieces of equipment be purchased subject to the same conditions noted above. In response, on December 12, 2000, Benison, of Atlantic Recycled, issued Purchase Orders 715260 and 715261 directing that Messer purchase those additional pieces of equipment and promising a downpayment of $298,000.

On January 15, 2001, Messer assigned to Plaintiff (then called Engineered Gas Systems) responsibility for the turnkey on-site liquid nitrogen system, including the existing Atlantic Recycled Purchase Orders 715258, 715260 and 715261. In addition, Plaintiff agreed to purchase from Messer (also known as MG Generon) several high pressure membrane modules that were ordered by Atlantic Recycled's Purchase Order 715260. On January 17, 2001, John M. Riordan, Recovery Technologies' Project Manager for the Plant, faxed Steve Benison, who had signed Atlantic Recycled's three purchase orders, the following instructions:

> "Please prepare a new letter transmitting P.O.'s 715260 and 715261 <u>without the stipulation</u> that Messer purchase this equipment back. Please note that this letter supersedes the letter issued on December 12, 2000. As previously discussed, the risk is minimal that this system won't be installed and this stipulation has caused problems with the leasing [financing] company" (emphasis added).

One day later, on January 18, 2001, Mr. Benison, as instructed, issued a letter to Messer stating the following: "The items mentioned on P.O. 715260 and 715261 are to be purchased by Atlantic Recycled Rubber Inc. This equipment is to be delivered to our site at 185 Mingo Road, Kemptown, Nova Scotia, Canada, <u>as soon as possible</u>" (emphasis added).

On January 19, 2001, the Plaintiff, Messer, and Atlantic Recycled signed an agreement, whereby Atlantic Recycled (1) reaffirmed its agreement to purchase the equipment ordered by Purchase Orders 715258, 715260 and 715261, and (2) agreed that Plaintiff (then called EGS) would execute those purchase orders.  Therefore, as of January 19, 2001, Defendant Atlantic Recycled Rubber agreed that the Plaintiff should order the equipment on Atlantic's behalf covered by those three purchase orders.  In reliance on those three Atlantic Recycled Purchase Orders and upon the January 19, 2001 agreement signed by Atlantic Recycled, Plaintiff ordered the following equipment from the following vendors on the dates stated (the following chart may be used as demonstrative evidence at trial):

| ATLANTIC RECYCLED PO 715258 | | |
|---|---|---|
| **VENDOR** | **EQUIPMENT** | **EGS P.O. to Vendor Date** |
| Cutler Hammer | Feed Breaker | 2/2/2001<br>2/14/2001<br>3/1/2001 |
| ABB Power | Transformer 15/4.6KV | 2/2/2001 |
| Supplied by Messer | Cryogenic Storage Vessel | |
| ATLANTIC RECYCLED PO 715260 | | |
| **VENDOR** | **EQUIPMENT** | **EGS P.O. to Vendor Date** |
| MG Generon | High Pressure Membrane | 1/20/2001 |
| MG Generon | Refrigerated Dryer | 1/20/2001 |
| Ingersoll Rand | Feed Compressor | 1/22/2001 |
| Ingersoll Rand | Recycle Compressor | 1/22/2001 |
| ACD | Compander | 1/22/2001 |
| PSB Industries | Mole Sieve | 1/25/2001 |
| ATLANTIC RECYCLED PO 715261 | | |
| **VENDOR** | **EQUIPMENT** | **EGS P.O. to Vendor Date** |
| Vilter | Liquefier Unit | 2/21/2001 |
| Chart Industries and API Basco | Exchanger Cores | 1/24/2001 |
| Hydro-Thrift Corp. | Cooling Water System | 1/23/2001 |
| ACD | LIN Pump | 1/22/2001 |
| Cutler Hammer and AMSCO Sales | Electrical Package | 2/2/2001<br>2/14/2001<br>3/1/2001 |

In addition, based upon Atlantic Recycled's statements that its project requirements necessitated the delivery of the equipment "as soon as possible," Plaintiff undertook engineering design efforts and created plans, including foundation plans and equipment specifications for the Truro facility, which efforts had a value of $237,978. Most of this engineering effort was required with or without the urgency of the schedule, because specifications and technical details for the equipment (size, flow rate, pressures, temperatures, cooling requirements, etc.) needed to be fully developed before the equipment could be subsequently manufactured. Defendants knew that this engineering work was necessary and that Plaintiff was doing that work.

On or about January 25, 2001, Plaintiff sent Atlantic Recycled invoice EGS01-00001, which covered 20% down payments for one feed breaker, one transformer and 95% payment for a cryogenic storage tank, whose installation was nearly complete, equipment covered by Atlantic Recycled's Purchase Order 71528. On or about January 30, 2001, Plaintiff sent Atlantic Recycled invoice EGS01-2 for the $298,001 down payment on the equipment covered by Atlantic Recycled's Purchase Orders 715260 and 715261. Plaintiff also invoiced Defendants again in October and November 2001.

By the end of February 2001, Plaintiff had become concerned about Defendants' failure to pay for the equipment they had ordered. On February 26, 2001, Mr. Timberlake, an employee of Plaintiff, had a telephone conversation with a Rick Kelley, Casella's Director of Development, addressing a number of issues including the Defendants' failure to pay for the equipment already ordered by Atlantic Recycled's three Purchase Orders. On February 27, 2001, Mr. Timberlake wrote Mr. Kelley confirming that conversation. In that letter, Mr. Timberlake observed that not only did Plaintiff not have an order for the remaining elements of the turnkey project, Defendants had not even paid for the equipment they had <u>already</u> directed Plaintiff to order for the plant.

Finally, pursuant to Plaintiff's January 25, 2000 invoice EGS01-00001, on or about March 9, 2001, Recovery Technologies made a payment to Plaintiff in the amount of $100,750.00, which represented partial payments for one feed breaker, one transformer, and a cryogenic storage tank which by that time had been fully installed at the Plant. Defendants have never paid any portion of Plaintiff's January 30, 2001 invoice for $298,000.

Although Defendants had not fully paid for the equipment they ordered, an internal memorandum dated March 23, 2001 authored by Recovery Technologies' John Riordan stated:

> "It is also important that after reviewing the proposals last November, a decision was made to enter into an agreement with EGS [MLEA]. EGS has proceeded in good faith to provide the liquid nitrogen facility in a timely fashion. Purchase orders have been issued for a portion of the equipment."

During the next several months, MLEA continued to negotiate with the Defendants about the remainder of the turnkey project, i.e., the additional engineering work and additional equipment needed to complete and the start up Plant. During that time, Defendants failed to make any further payments to MLEA on the three Purchase Orders MLEA had already executed for Defendants. Defendants interposed numerous excuses for their failure to pay, such as their inability to get acceptable financing for the remainder of the project and Casella's sale of Recovery Technologies's assets. By the end of August 2001, MLEA had already received numerous calls from the equipment vendors asking for full payment for the equipment MLEA had ordered for Defendants. By that time, MLEA was facing serious cash flow and liquidity problems as a result of Defendants' failure to pay what they owed. In response to Plaintiff's urgent demands for payment by the Defendants, James Anderson, the President of Recovery Technologies, emailed George Timberlake, an MLEA employee, on August 31, 2001 and stated:

> "I believe that maybe we have resolved the problem. Our lawyer, Bob Wetzel, said why don't we just lend you the money on a demand basis,

and then there is no need to fuss with a contract for the time being. He is checking this out now."

Having no real choice and needing an infusion of cash due to the Defendants' failure to pay, MLEA executed two demand Promissory Notes, one dated August 31, 2001, and another dated September 7, 2001 each in the amount of $75,000.00. In addition, Plaintiff executed a Security Agreements in favor of Recovery Technologies, which gave Recovery Technologies collateral in the engineering, foundation and architectural plans that Plaintiff had prepared (the "Plans"). Those Promissory Notes and the Security Agreements are the basis of Recovery Technologies' Counterclaim. That Counterclaim, however, is meritless. The so-called "loan" was, in fact, money already owed by Defendants on the three Purchase Orders that MLEA executed on the Defendants' behalf. In addition, at Defendants' request, on or about September 10, 2001, Mr. Timberlake, an MLEA employee, personally delivered a portion of those Plans to Recovery Technologies at its offices in Guttenberg, New Jersey. At that time, those Plans did not include the foundation drawings, because MLEA had not yet completed those drawings. Recovery Technologies insisted that the foundation drawings be part of the collateral for the demand notes. As a result, within two weeks, i.e., by the end of September 2001, MLEA completed the foundation drawings and forwarded them to Recovery Technologies via FedEx. MLEA has been advised by one of Defendants' employees that those Plans were, in fact, used by Defendants and that the foundations were installed at the Truro facility based upon the Plans prepared for the Defendants by MLEA. Although MLEA did receive the $150,000 "loan" from Recovery Technologies, Recovery Technologies exercised its security interest in the collateral, i.e., the Plans, and MLEA delivered those Plans to Recovery Technologies. The Plans have a total value of $237,978. The Court should declare that the Notes have been satisfied.

Following further discussions about when Defendants would pay for the equipment that was the subject of the three Purchase Orders, on September 14, 2001, the parties reached an agreement that had the following key elements:

- o Each equipment vendor would issue a new invoice for the balance owed, with Recovery Technologies being the payor.

- o Each equipment vendor would send the new invoice to the Plaintiff, which would determine whether the correct amount was being invoiced. If so, those new invoices would be sent by the Plaintiff to Recovery Technologies.

- o Recovery Technologies would then make payment directly to the equipment vendors.

To that end, Plaintiff prepared a draft letter to be sent to the vendors reflecting the above procedure and on September 17, 2001 emailed that draft vendor letter to Defendants' attorney, Mr. Robert Wetzel. In order to insure prompt payment of the equipment vendors, Mr. Timberlake emailed Mr. Wetzel on September 18, 2001, asking for his direction in selecting a "first wave" of five vendor invoices for payment. By reply email on September 20, 2001, Mr. Wetzel stated: "It is more simple than you guesses [sic]. I asked you to pick 5 to do. We will do 5 and then do another 5 and so move down the line." As a result, that same day, Mr. Timberlake wrote Mr. Wetzel with MLEA's selection of five invoices to be paid first. Four days later, on September 24, 2001, in keeping with the "first wave" of five invoices selected, Plaintiff sent the new payment procedure letter to those five vendors. On October 1, 2001, Plaintiff wrote Mr. Wetzel again, identifying the "second wave" of five invoices to be paid. On November 5, 2001, Plaintiff sent Mr. Merckert of Recovery Technologies the "third wave" of vendor invoices. Notwithstanding that Plaintiff agreed to the new invoicing and payment procedure requested by the Defendants, to this date, Defendants have paid only one of those vendors' bills, Chart Heat Exchangers, a vendor of aluminum heat exchangers, in the amount of

$27,008.00 on or about October 12, 2001. Chart was the vendor of the "Exchanger Cores" listed on Atlantic Recycled's Purchase Order 715261.

Defendants have, on three occasions, agreed to pay for the equipment covered by their three Purchase Orders but have failed to do so. First, Defendants issued the three purchase orders to Messer. Second, Defendants agreed that Messer could assign those Purchase Orders to Plaintiff for execution. Third, at Defendants' request, Plaintiff obtained reissued invoices from the equipment vendors to be paid directly by the Defendants, which Defendants agreed to pay but never paid except for the one payment to Chart Heat Exchangers.

At present, Plaintiff has been sued by three equipment vendors for the payments that Defendants have failed to make. Those suits are as follows:

(1)    ABB Power T & D Company, Inc. v. Engineered Gas Systems LLP, Chester County CCP, No. 02-1238; (the transformer vendor for Purchase Order 71528). Plaintiff settled this suit by agreeing to pay the $30,328 in ten (10) monthly installments. No installments remain to be paid.

(2)    PSB Industries, Inc. v. Engineered Gas Systems f/k/a Engineered Gas Systems, LLP and MLEA, Inc., Erie County CCP, No. 11999-2002; (the mole sieve vendor for Purchase Order 715260) (settled on January 12, 2004 for $40,000 in installments; one installment of $5,000 has been paid).

(3)    Generon IGS, Inc. f/k/a MG Generon, Inc. v. Engineered Gas Systems LLP and Mainline Engineering Associates, Chester Count CCP, No. 02-00973 (the high pressure membrane/refrigerated dryer vendor for Purchase Order 715260) (judgment entered against MLEA for $861,527; of that amount $475,000 is the price of the equipment ordered for Defendants).

III.    <u>Damages</u>

Under Pennsylvania law, when the defendant wrongfully refuses to make a payment due, the Plaintiff is entitled to recover damages with include the price of the goods, plus any incidental damages, in order to put the Plaintiff where he would have been, had the defendant not breached the contract. 13 Pa.C.S.A. § 2709; <u>Cohen v. La France Workshop</u>, 171 A. 90 (Pa. Super. 1934). <u>See also</u> 13 Pa.C.S.A. § 1106 (the remedies provided in Pennsylvania's commercial code shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had performed). The incidental damages available to the Plaintiff include the costs it has incurred storing the equipment while the Defendants have continued their breach. 13 Pa.C.S.A. § 2715.

Plaintiff is also entitled to recovery the costs it incurred in attempting to mitigate damages by trying to sell to others the equipment the Defendants ordered but never paid for. 13 Pa.C.S.A. §§ 1103 and 2710.

The Plaintiff is also entitled to prejudgment interest, calculated from the date of the breach. <u>Delaware Valley Equip. Co., Inc. v. Granaham</u>, 409 F.Supp. 1011 (E.D.Pa. 1976). Under Pennsylvania law, "an award of prejudgment interest has been characterized as a right to which the plaintiff is entitled, and this is true even if there was a bona fide dispute as to the amount of the debt." <u>Frank B. Bozzo, Inc. v. Electric Weld Div. of the Fort Pitt Div. of Sprang Indus., Inc.</u>, 345 Pa. Super. 423, 429-30, 498 A.2d 895, 898 (1985). Specifically, Pennsylvania follows the Restatement rule on the availability of prejudgment interest as damages. <u>Id.</u> at 431, 498 A.2d at 899.

§ 354.  Interest as Damages

(1)     If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.

(2)     In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due.

Prejudgment interest is calculated at the rate of 6 percent per annum.  41 Pa.C.S.A. § 202.

Plaintiff's claims for relief fall into four categories.  First, Plaintiff is entitled a declaratory judgment that Defendants are liable for the equipment Plaintiff ordered on Defendants' behalf, less Defendants' partial payment of $100,750.

Second, Plaintiff is entitled to a declaratory judgment that the Notes are satisfied and an award of damages equal to the difference between the price of the Plans that it delivered to Recovery Technologies in September 2001 ($237,978) and the $150,000 "loan" Plaintiff received that was secured by those Plans.  That difference is $87,978.

Third, Plaintiff is entitled to incidental damages in the form of costs incurred due to Defendant's breach.  Here, Plaintiff incurred about $1,000 per month in storage fees for equipment Defendants never paid for.  In addition, Plaintiffs is entitled to the costs incurred in attempting to sell the equipment to others.

Fourth, Plaintiff is entitled to prejudgment interest at the rate of 6 percent per annum

Attached as Exhibit "B" to this Pretrial Memorandum are tables setting forth in detail Plaintiff's claims for damages.

IV.     Plaintiff's Witness List

The following witnesses may present both liability and damages testimony:

1.  Theodore J. DelGaizo, P.E., Esq.
    MLEA, Inc.
    211 Welsh Pool Road #120
    Exton, PA  19341.

2.  Manuel Menendez
    MLEA, Inc.

211 Welsh Pool Road #120
Exton, PA  19341.

3.  George Timberlake
    MLEA, Inc.
    211 Welsh Pool Road #120
    Exton, PA  19341.

Plaintiff reserves the right to call any witness identified in Defendants' respective

Pretrial Memoranda as part of its case-in-chief and also reserves the right to call additional witnesses

not listed above on rebuttal.

Plaintiff will designate and offer deposition testimony of the following Defendants'

employees/agents/representatives:

1.  Steven Benison, former General Manager of Atlantic Recycled.

2.  James Bohlig, President, Chief Operating Office and Chief Development Officer of
Casella Waste Systems, Inc.

3.  Richard Kelley, Jr., former Director of Development for Casella Waste Systems,
Inc.

4.  Martin J. Sergi, President and Chief Executive Officer of Recovery Technologies
Group Inc. and former member of the Board of Directors of Casella Waste Systems, Inc.

5.  Robert E. Wetzel, Esquire in-house counsel for Casella Waste Systems, Inc.

V.    Schedule of Trial Exhibits

Plaintiff's schedule of exhibits that its presently intends to offer at trial is attached as

Exhibit "A."  Plaintiff reserves the right to offer demonstrative exhibits at trial, as well as any exhibits

listed in Defendants' respective Pretrial Memoranda or used or referred to by Defendants at trial and

any other court papers filed in this case or attachments thereto.  Plaintiff also reserves the right to offer

rebuttal and impeachment exhibits as the exigencies of the case may require and any exhibits used

during any depositions in this matter.

VI.  <u>Estimated Trial Time</u>

        Plaintiff estimates that its case-in-chief will take three to four days.

                       Respectfully submitted,

                       Philip J. Katauskas, Esquire
                       M. Kendall Brown, Esquire
                       PEPPER HAMILTON LLP
                       3000 Two Logan Square
                       Eighteenth & Arch Streets
                       Philadelphia, PA  19103-2799
                       (215) 981-4000
                       Attorneys for MLEA, Inc.

# EXHIBIT A

## PLAINTIFF'S SCHEDULE OF TRIAL EXHIBIT
(Parenthicals refer to deposition exhibits.)

1.  September 13, 2000 letter from Anderson to Messer AGS (Benison 1).

2.  September 13, 2000 letter from Timberlake to Anderson (Benison 2).

3.  November 20, 2000 letter from Timberlake to Meckert (Benison 3).

4.  December 1, 2000 letter from Benison to Timberlake (Benison 4).

5.  December 11, 2000 letter from Timberlake Meckert (Benison 5).

6.  December 12, 2000 letter from Benison to Timberlake (Benison 6).

7.  January 15, 2001 letter/agreement among DelGaizo, Smith and Alewijnse (Benison 7).

8.  January 17, 2001 fax from Riordan to Benison (Benison 8).

9.  January 18, 2001 letter from Benison to Timberlake (Benison 9).

10. January 19, 2001 letter agreement from Benison, DelGaizo, Alewijnse and Smith to Meckert (Benison 10).

11. January 25, 2001 Invoice from EGS to ARR (Benison 11).

12. January 30, 2001 Invoice from EGS to ARR (Benison 12).

13. February 27, 2001 letter from Timberlake to Kelley (Benison 13).

14. March 26, 2001 Fax from Petrie to Kelley (Benison 14).

15. March 23, 2001 memo from Riordan to Sergi, Pirasteh, Meckert, Anderson, Benison and Kelley (Benison 15).

16. August 31, 2001 e-mail from Anderson to Timberlake (Wetzel 1).

17. August 31, 2001 Promissory Note (Wetzel 2).

18. August 31, 2001 Security Agreement (Wetzel 3).

19. September 7, 2001 Promissory Note.

20. September 7, 2001 Security Agreement.

21. September 14, 2001 letter from Timberlake to Meckert.

22.  September 17, 2001 e-mail to from Timberlake to Wetzel (Wetzel 4).

23.  September 18, 2001 fax/email from Timberlake to Wetzel (Wetzel 5).

24.  September 20, 2001 fax/email from Wetzel to Timberlake (Wetzel 6).

25.  September 20, 2001 letter from Timberlake to Wetzel (Wetzel 7).

26.  September 24-25, 2001 letters from Timberlake to Chart, ACD, Vilter and ABB (Wetzel 8).

27.  October 1, 2001 letter from Timberlake to Wetzel (Wetzel 9)..

28.  November 5, 2001 letter from Higgins to Meckert.

29.  October 12, 2001 memo from Meckert to Timberlake.

30.  October 23, 2001 LINC-15U Construction Package Cover Sheet and List of Drawings Truro, Nova Scotia, Job No. 0101 (DelGaizo 1).

31.  June 12, 2001 Engineering Flowsheet – List of Drawings, Truro, N.S., Canada – LINC-15U (DelGaizo 2).

32.  June 25, 2001 LINC-30, CB0511 Cold Box Cover Sheet and List of Drawings, Truro, Nova Scotia, Job No. 0101A (DelGaizo 3).

33.  Casella Waste Systems, Inc. organizational charts for 1999-2002 (Bohlig1).

34.  Defendants Atlantic Recycled Rubber, Inc.'s and Recovery Technologies Group, Inc.'s Initial Disclosures Pursuant to Fed.R.Civ.P. 26(a), dated October 28, 2002.

35.  Defendant Casella Waste Systems, Inc.'s Self-Executing Disclosure Statement dated October 25, 2002.

36.  Purchase Orders List (Menendez 7) (with back-up documentation, if needed).

37.  October 2, 2000 letter from Anderson to Timberlake (Timberlake 10).

38.  Gas Cost with An Operating Lease dated October 7, 2000 (Timberlake11).

39.  MLEA's Truro Engineering Costs (produced in discovery on August 7, 2003).

40.  January 12, Settlement Agreement and Promissory Note between MLEA and PSB Industries, Inc.

41.  April 17, 2002 Stipulation of Settlement between MLEA and ABB Power T&D Company, Inc.

42.  Truro project damages charts attached as Exhibit "B" to Plaintiff's Pretrial Memorandum.

43.  back-up documents supporting Plaintiff's costs of mitigating damages.

EXHIBIT "B"

## Truro project damages to MLEA/EGS

2/10/2004

| Description | Vendor name | Invoice No. | Original Price | Commitments and payments | Balance due |
|---|---|---|---|---|---|
| 1000/2500 KVA transformer | ABB Power T&D | UD-202051 | $ 30,328.00 | $ 30,328.00 | |
| Nitrogen compander | ACD | 89905-PPI | $ 192,300.00 | $ 38,460.00 | $ 141,560.00 |
| Filter/selenoid/valves | AMSCO Sales Corp | 16004915-01 | $ 15,068.00 | $ - | $ 15,068.00 |
| Compander aftercooler | API Basco | B2001-033 | $ 866.00 | $ 8,660.00 | |
| MCCs/transformer | Cutler-Hammer | D301587 | $ 107,793.00 | $ 17,871.40 | $ 83,111.00 |
| Cooling water/radiator pump | Hydro-Thrift Corp | 20011 | $ 82,522.00 | $ 16,504.40 | |
| Recycle and air compressors | Ingersoll-Rand Company | 1133943/944 | $ 592,690.00 | $ - | $ 177,807.00 |
| Membrane unit | MG Generon (now Generon IGS) | 102707 | $ 475,000.00 | $ 472,253.00 | |
| Nitrogen drier package | PSB Industries | 2023 | $ 36,207.00 | $ 41,600.00 | |
| Refrigeration unit | Vilter | CD2045 | $ 104,612.00 | $ 25,848.00 | |
| Cold box heat exchanger | Chart Industries | 432612 | $ 33,760.00 | $ 6,752.00 | |
| Storage of ABB transformers | John S. Connor | 197283 | | $ 20,225.00 | |
| Design/specifications/drawings | Main Line Engineering | 10544 | $ 250,000.00 | $ 234,054.00 | |
| Process design/specifications | Engineered Gas Systems | | $ 81,864.00 | $ 81,864.00 | |
| MG Generon development | MG Generon (now Generon IGS) | | $ 342,973.00 | $ 389,274.00 | |
| In house legal expenses | MLEA | | | $ 41,636.67 | |
| Mitigation costs | MLEA | | | $ 171,400.00 | |
| Interest | | | | $ 103,750.83 | |
| | | | | | |
| Subtotal | | | $ 2,345,983.00 | $ 1,700,481.30 | $ 417,546.00 |
| RTG loan to MLEA | | | | $ 150,000.00 | |
| | | | | | |
| **Total damages** | | | | **$ 1,550,481.30** | |

## Proposal Activity to Mitigate Truro Project Damages
### Employee Activity and Labor Rate

**2001 Activity**

| Proposal N | Client | Description | Keith Michael Hours | Rate | Total | George Timberlake Hours | Rate | Total | Manny Menendez Hours | Rate | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **2001 Activity** | | | | | | | | | | | |
| ES-01-03 | Turkish Steel | ASU with 30 tpd liquefier option | | | | 30 | 100 | 3000 | 136.5 | 100 | 13650 |
| ES-01-04 | Pacific Consolidated | 30 tpd liquefier | 16 | 100 | 1600 | 80 | 100 | 8000 | | | |
| ES-01-09 | Calico (Chuck Curtis) | 30 tpd ASU using some RTG parts | 8 | 100 | 800 | 80 | 100 | 8000 | | | |
| ES-01-19 | Aramco | ASU with 30 tpd liquefier | | | | 60 | 100 | 6000 | | | |
| ES-01-23 | Trident Seafood | 15 tpd liquefier using some RTG parts | 4 | 100 | 400 | 30 | 100 | 3000 | | | |

Page 2

## 2001 Activity

### Employee Activity and Labor Rate

| Proposal N | Client | Description | Keith Michael | | | George Timberlake | | | Manny Menendez | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Hours | Rate | Total | Hours | Rate | Total | Hours | Rate | Total |
| ES-01-24 | Howard Obman | 15 tpd or 30 tpd LiNC using either some or all of parts | | | | | | | | | |
| ES-01-25 | Roquette | H2 plant with 30 tpd O2 liquefier using RTG parts | | | | 30 | 100 | 3000 | | | |
| ES-01-35 | Arnold AFB | 30 tpd ASU with Liquefier | | | | 40 | 100 | 4000 | | | |
| | | | | | | 4 | 100 | 400 | | | |
| ES-01-53 | Pacific Consolidated | 30 tpd LiNC all of RTG parts except electrical | 6 | 100 | 600 | 8 | 100 | 800 | | | |

PHLEGAL #1541228 1F13C01_XLS

## Employee Activity and Labor Rate

### 2001 Activity

| Proposal N | Client | Description | Keith Michael | | | George Timberlake | | | Manny Menendez | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Hours | Rate | Total | Hours | Rate | Total | Hours | Rate | Total |
| ES-01-60 | Pacific Consolidated | 30 tpd liquefier using RTG parts | | | | 30 | 100 | 3000 | | | |
| Special Offer | Ian Scott | LiNC 30 Unit, complete RTG system for sale in the Philippines | | | | 80 | 100 | 8000 | 147.5 | 100 | 14750 |

### 2002 Activity

| Proposal N | Client | Description | Keith Michael | | | George Timberlake | | | Manny Menendez | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Hours | Rate | Total | Hours | Rate | Total | Hours | Rate | Total |
| ES-2002-018 | Veecon IPA | 30 tpd liquefier using RTG parts | 4 | 100 | 400 | 4 | 100 | 400 | | | |
| ES-2002-019 | Veecon IPA | 20 tpd liquefier using RTG parts | | | | 6 | 100 | 600 | | | |

PHLEGAL #1541228 1F13C01_XLS

## Employee Activity and Labor Rate

### 2001 Activity

| Proposal N | Client | Description | Keith Michael Hours | Keith Michael Rate | Keith Michael Total | George Timberlake Hours | George Timberlake Rate | George Timberlake Total | Manny Menendez Hours | Manny Menendez Rate | Manny Menendez Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ES-2002-035 | Pacific Consolidated | 30 tpd liquefier using RTG parts | | | | 2 | 100 | 200 | | | |
| ES-2002-037 | Sterlite Industries | 30 tpd liquefier option using RTG parts | | | | 20 | 100 | 2000 | | | |
| ES-2002-048 | Interstate Brands | 45 tpd liquefier using RTG parts | 8 | 100 | 800 | 30 | 100 | 3000 | | | |
| ES-2002-061 | Ranch Cryogenics | 30 tpd liquefier using RTG parts | | | | 10 | 100 | 1000 | | | |
| ES-2002-068 | UIGI | 30 tpd liquefier using RTG parts | 4 | 100 | 400 | 10 | 100 | 1000 | | | |

### 2003 Activity

**2001 Activity**

**Employee Activity and Labor Rate**

| Proposal N | Client | Description | Keith Michael Hours | Keith Michael Rate | Keith Michael Total | George Timberlake Hours | George Timberlake Rate | George Timberlake Total | Manny Menendez Hours | Manny Menendez Rate | Manny Menendez Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ES-2003-0 | Amplus Intl | Potential Ir | 60 | 100 | 6000 | 80 | 100 | 8000 | | | |
| ES-2003-1 | FIBA | Potential J | 32 | 100 | 3200 | 100 | 100 | 10000 | | | |
| | CRT-Charl | Potential J | 24 | 100 | 2400 | 40 | 100 | 4000 | | | |
| ES-2003-1 | EGS-Gene | Efforts spe | 120 | 100 | 12000 | 20 | 100 | 2000 | | | |
| ES-2003-131 | Veecon IPA | 30 tpd liquefier using RTG parts | | | | 30 | 100 | 3000 | 20 | 100 | 2000 |
| MLEA Pros | Numerous | Developme | 200 | 100 | 20000 | | | | | | |
| **2004 Activity** | | | | | | | | | | | |
| ES-2004-0 | Alloy Custo | Potential Partnership | | | | 80 | 100 | 8000 | | | |
| ES-2004-0 | Precision C | Potential Partnership | | | | 20 | 100 | 2000 | | | |
| **Totals** | | | **486** | | **48600** | **924** | | **92400** | **167.5** | **200** | **30400** |

| | | |
|---|---|---|
| **TOTALS-** | **1577.5** | **171400** |

**Interest**

| | Mar-01 | Apr-01 | May-01 | Jun-01 | Jul-01 | Aug-01 | Sep-01 | Oct-01 | Nov-01 | Dec-01 | Jan-02 | Jan-02 | Mar-02 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABB | | | | | | | | | | | | | |
| ACD | 38460 | | | | | | | | | | | | |
| AMSCO | | | | | | | | | | | | | |
| API | | | | | | | | | | | | | |
| C-H | | | | | | | | | | | | | |
| Hydro | 16504.4 | | | | | | | | | | | | |
| IR | | | | | | | | | | | | | |
| Generon | | | | | | | | | | | | | |
| PSB | 20816.4 | | | | | | | | | | | | |
| Vilter | | | | | | | | | | | | 5031.6 | |
| Chart | 6752 | | | | | | | | | | | | |
| JSC | | | | | | | | | | | | | |
| MLE | 234054 | | | | | | | | | | | | |
| EGS | 81864 | | | | | | | | | | | | |
| RTG | | | | | | | -150000 | | | | | | |
| Interest | | 2656.339 | 2674.048 | 2691.875 | 2709.82 | 2727.886 | 2746.072 | 1764.379 | 1776.141 | 1787.982 | 1799.902 | 1811.902 | 1857.525 |
| Total | 398450.8 | 401107.1 | 403781.2 | 406473.1 | 409182.9 | 411910.8 | 264656.8 | 266421.2 | 268197.4 | 269985.3 | 271785.2 | 278628.7 | 280486.3 |

**Interest**

| | Apr-02 | May-02 | Jun-02 | Jul-02 | Aug-02 | Sep-02 | Oct-02 | Nov-02 | Dec-02 | Jan-03 | Feb-03 | Mar-03 | Apr-03 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABB | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 328 | |
| ACD | | | | | | | | | | | | | |
| AMSCO | | | | | | | | | | | | | |
| API | | | | | | | 450 | 450 | 450 | 450 | 450 | 450 | 450 |
| C-H | | | | | | | | | | 2000 | 2000 | 2000 | 2000 |
| Hydro | | | | | | | | | | | | | |
| IR | | | | | | | | | | | | | |
| Generon | | | | | | | | | | | | | |
| PSB | | | | | | | | | | | | | |
| Vilter | | | | | | | | | | | | | |
| Chart | | | | | | | | | | | | | |
| JSC | | | | | | | | | | | | | |
| MLE | | | | | | | | | | | | | |
| EGS | | | | | | | | | | | | | |
| RTG | | | | | | | | | | | | | |
| Interest | 1869.908 | 1882.375 | 1914.924 | 1947.69 | 1980.674 | 2013.879 | 2047.305 | 2083.954 | 2120.847 | 2157.986 | 2208.705 | 2259.763 | 2293.349 |
| Total | 282356.2 | 287238.6 | 292153.5 | 297101.2 | 302081.8 | 307095.7 | 312593 | 318127 | 323697.8 | 331305.8 | 338964.5 | 344002.3 | 348745.6 |

PHLEGAL #1541228 1F13C01_XLS

Interest

| | May-03 | Jun-03 | Jul-03 | Aug-03 | Sep-03 | Oct-03 | Nov-03 | Dec-03 | Jan-04 | Feb-04 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ABB | | | | | | | | | | | |
| ACD | | | | | | | | | | | |
| AMSCO | | | | | | | | | | | |
| API | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | |
| C-H | 2000 | 2000 | 2000 | 2000 | 1871.4 | | | | | | |
| Hydro | | | | | | | | | | | |
| IR | | | | | | | | | | | |
| Generon | | | | | | | | | | | |
| PSB | | | | | | | | | 5000 | | |
| Vilter | | | | | | | | | | | |
| Chart | | | | | | | | | | | |
| JSC | | | | | 20225 | | | | | | |
| MLE | | | | | | | | | | | |
| EGS | | | | | | | | | | | |
| RTG | | | | | | | | | | | |
| Interest | 2324.971 | 2356.804 | 2388.849 | 2421.108 | 6133.956 | 6611.962 | 6729.661 | 6849.322 | 6970.978 | 7177.994 | $ 103,750.83 |
| Total | 353520.6 | 358327.4 | 363166.3 | 368037.4 | 396717.7 | 403779.7 | 410959.3 | 418258.7 | 430679.6 | 438307.6 | |

PHLEGAL #1541228 1F13C01_XLS

## CERTIFICATE OF SERVICE

I, Philip J. Katauskas, hereby certify that on February 10, 2004 a true and correct copy of the

foregoing Plaintiff's Pretrial Memorandum was served via regular mail upon the following:

John F O'Riordan, Esquire
Eckert Seamans Cherin & Mellott, LLC
1515 Market Street, Ninth Floor
Philadelphia, PA  19102

Brian J. McCormick, Jr., Esquire
Buchanan Ingersoll, PC
Eleven Penn Center, 14th Floor
1835 Market Street
Philadelphia, PA  19103-2985

Philip J. Katauskas