IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MLEA, INC., : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | No. 02-CV-4393 |
| : | |
| ATLANTIC RECYCLED RUBBER : | |
| INC., RECOVERY TECHNOLOGIES : | |
| GROUP INC., AND CASELLA : | |
| WASTE SYSTEMS, INC. : | |
| : | |
| Defendants. : | |

**DEFENDANT RECOVERY TECHNOLOGIES GROUP, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT, OR, ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Plaintiff MLEA, Inc. ("MLEA" or "Plaintiff") brought this action to recover damages for Defendant Atlantic Recycled Rubber, Inc.'s ("ARR's") alleged breach of contract, promissory estoppel and unjust enrichment. Plaintiff obtained three purchase orders from ARR, and when it obtained those purchase orders, knew that it was contracting with ARR as opposed to RTG (Ex. D,Timberlake at 18, 157, 159-60, Ex. B, DelGaizo at 28-29, 101-102)[1] and was then fully aware that ARR was a wholly-owned subsidiary of another company. (Ex. D, Timberlake at 178-79). At no time prior to ARR's issuance of the three purchase orders did Plaintiff ever believe that ARR's ultimate corporate parent was going to guarantee ARR's performance of the contract. (Ex. D, Timberlake at 151, 178-79). It is undisputed that Plaintiff never entered into any agreement with RTG for either the purchase of equipment or the provision of any

---

[1] The uncontested facts stated herein are taken from documents produced in this matter, excerpts from deposition transcripts and sworn declarations provided in this matter. These materials are included in the Appendix of Exhibits in Support of Defendants Atlantic Recycled Rubber, Inc.'s and Recovery Technologies Group, Inc.'s Motions for Summary Judgment which has been filed simultaneously herewith. Citations to the Appendix are to "Ex. _____."

engineering services. (Ex. B, DelGaizo at 34, 39-40, 94, 101). Nevertheless, Plaintiff's Complaint asks this Court to pierce the corporate veil and hold Defendant RTG liable for ARR's alleged breach of contract based solely on Plaintiff's easily-made assertion that "[o]n information and belief, . . .[RTG] controlled and/or directed the acts and/or omissions of its wholly-owned subsidiary," ARR. (Complaint, ¶ 5).

The undisputed facts do not support Plaintiff's request.[2] The undisputed evidence, including deposition testimony, documents and declarations, establishes that ARR is a wholly-owned subsidiary of Recovery Technologies (Canada), Inc. ("RTI-Canada"), which is not a party to this action. RTI-Canada, in turn, is a wholly-owned subsidiary of Defendant RTG. Plaintiff has not produced any evidence that RTG interacts with RTI-Canada, which in turn, interacts with ARR in any way other than the typical manner in which any parent corporation interacts with its wholly-owned subsidiary. Plaintiff has not made any showing that RTG exerted undue control over ARR, or that RTG acted to defraud Plaintiff. As such, there are no genuine issues of material fact with regard to whether the corporate veil should be pierced, and RTG is entitled to judgment as a matter of law on all of ARR's claims against it. In the alternative, RTG joins in and incorporates here by reference, the Motion for Summary Judgment of Defendant ARR.

II.   **STATEMENT OF UNCONTESTED FACTS**

RTG hereby incorporates the Statement of Uncontested Facts set forth in the Motion for Summary Judgment of Defendant ARR and all exhibits thereto.

---

[2] Contrary to Plaintiff's allegation, ARR is not a wholly-owned subsidiary of Defendant RTG.

### III. <u>ARGUMENT</u>

#### A. **Legal Standard**

Under Fed. R. Civ. P. 56, this Court must grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). If Plaintiff is unable to prove even one element of its claim against RTG, then there can be no <u>genuine issue</u> as to any <u>material</u> fact, and summary judgment in RTG's favor is appropriate. <u>Id</u>. at 322-23, 106 S. Ct. at 2552.

The party seeking summary judgment bears the initial burden of showing that the pleadings, admissions, answers to interrogatories and affidavits establish the absence of a general issue of material fact. <u>Id</u>. at 323, 106 S. Ct. at 2553. If the moving party carries its burden under Rule 56(c) "the non-moving party must come forward with '<u>specific facts</u> showing that there is a <u>genuine issue for trial</u>.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (first emphasis added) (Fed. R. Civ. P. 56(e)).[3]

In opposing this motion, Plaintiff cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient for Plaintiff to "simply show that there is some metaphysical doubt as to the material facts." <u>Id</u>. at 586, 106 S. Ct. at 1356. Instead, Rule 56(e) requires Plaintiff to go beyond the pleadings and present affirmative evidence in support of its position. <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553; <u>Diamond State Ins. Co. v. Ranger Ins. Co.</u>, 47 F. Supp. 2d 579, 582-83 (E.D. Pa. 1999).

---

[3] If the trial could have but one result with respect to the issue of whether to pierce the corporate veil, then it is appropriate for the trial court to enter summary judgment. <u>In re Silicone Gel Breast Implants Products Liability</u>, 837 F. Supp. 1128, 1133 (N.D. Ala. 1993).

An issue of fact is genuine "only if there is sufficient evidence to permit a reasonable fact finder to return a verdict for the non-moving party. An issue of fact is material only if it might affect the outcome of the suit under the governing law." Leo v. State Farm Mut. Auto. Ins. Co., 939 F. Supp. 1186, 1187 (E.D. Pa. 1996) (citations omitted), aff'd without published opinion, 116 F.3d 468 (3d Cir. 1997). Thus, summary judgment can only be defeated if, with respect to each element essential to Plaintiff case, and for which it will bear the burden of proof at trial, Plaintiff presents evidence from which the jury could *reasonably find* in its favor. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

    **B.** **Plaintiff Cannot Pierce RTG's Corporate Veil Without Proof That RTG and RTG's Wholly-Owned Subsidiary, RTI-Canada, Both Exerted Such Pervasive Control Over ARR Such That ARR Was A Mere Sham and Which Resulted in Fraud Or Injustice.**

Plaintiff's Complaint asks this Court to pierce the corporate veil and hold Defendant RTG liable for ARR's alleged breach of contract, promissory estoppel and unjust enrichment based solely on Plaintiff's easily-made, boiler-plate assertion that "**[o]n information and belief**, . . [RTG] controlled and/or directed the acts and/or omissions of its wholly-owned subsidiary," ARR. (Complaint, ¶ 5; emphasis added). Plaintiff has conducted extensive discovery and depositions of the defendants and has failed to produce any evidence of the extraordinary domination and control necessary to pierce the corporate veil.

    **1.** **The Corporate Form Should Not Be Disregarded Lightly.**

The general rule in Pennsylvania is that the corporate entity should be recognized and upheld absent compelling reasons to disregard the theory of the corporate entity and the limited

4

liability of their shareholders.[4]  Jiffy Lube International, Inc. v. Jiffy Lube of Pennsylvania, Inc., 848 F. Supp. 569, 580 (E.D. Pa. 1994).  Pennsylvania requires a very high showing of domination and control in order to establish alter ego or instrumentality liability.  Id.  To hold that one corporation is a mere instrumentality or alter ego of another corporation, Pennsylvania law requires a party seeking to pierce the corporate veil to establish that the controlling corporation wholly ignored the separate status of the controlled corporation and so dominated the affairs of the controlled corporation that its existence was a mere sham.  Id.  Moreover, as a threshold, plaintiff must establish "that the controlling corporation wholly ignored the separate status of the controlled corporation and so dominated and controlled its affairs that its separate existence was a mere sham," or that "the controlled corporation acted robot- or puppet-like in mechanical response to the controller's tugs."  Garden State Tanning, Inc. v. Mitchell Manufacturing Group, Inc., 55 F. Supp. 2d 337, 344-45 (E.D. Pa. 1999)

Indeed, the corporate form was created to allow shareholders to invest without incurring personal liability for the acts of the corporation.  See  Pearson v Component Technology Corporation, 247 F.3d 471 (3rd Cir. 2001).  These principles are equally applicable when the shareholder is, in fact, another corporation, and hence, mere ownership of a subsidiary does not justify the imposition of liability on the parent.  See Id.  Under Pennsylvania law, a subsidiary is generally regarded as a "separate and independent entity" from the parent corporation. Commonwealth v. Vienna Health Prods., Inc., 726 A.2d 432, 434 (Pa. Commw. 1999). Accordingly, a parent corporation is not generally liable for the contractual obligations of a subsidiary, even if the parent wholly owns the subsidiary.  Quandel Group v. Chamberlin Co.,

---

[4] Piercing of the corporate veil is an extraordinary remedy, as "[t]here is a strong presumption in Pennsylvania against piercing the corporate veil." Miners  v. Alpine Equipment Corporation, 722 A.2d 691, 694 (Pa. Super. 1998); Lumax Industries, Inc. v. Aultman, 669 A.2d 893, 895 (Pa. 1995).

Inc., 1999 WL 386602, at *2 n. 1 (E.D. Pa. June 14, 1999) (citing Botwinick v. Credit Exch., Inc., 213 A.2d 349, 353 (Pa. 1965)).

The Pennsylvania Supreme Court has always recognized that "complex corporate entities . . . often conduct business through subsidiaries to protect the parent from the financial, contractual and tort liabilities of its subordinate units. . . . [C]ourts will disregard the corporate entity only in limited circumstances when used to defeat public convenience, justify wrong, protect fraud or defend crime."  Kiel v. Action Mfg Co., 517 Pa. 183, 190, 535 A.2d 571, 574 (1987); Sams v. Redevelopment Authority, 431 Pa. 240, 244, 244 A.2d 779, 781 (1968).

Additionally, the law recognizes that the corporate veil should be more readily pierced when involuntary creditors are involved than where the claims of voluntary creditors are at stake.  See, e.g., Miners, Inc. v. Alpine Equip. Corp., 722 A.2d 691, 695 (Pa. Super. 1998) (recognizing this distinction between voluntary and involuntary creditors), alloc. denied, 745 A.2d 1223 (Pa. 1999). An example of an involuntary creditor of a corporation is someone who has a tort claim against the company as the result of having been injured by the company's allegedly negligent business practices.  For example, someone who is injured in a collision with a truck would qualify as an involuntary creditor of the trucking company.  An example of a voluntary creditor, by contrast, is someone who voluntarily agrees to enter into a contractual relationship with that trucking company. Such a voluntary creditor has the option to choose both whether and with whom to contract, and voluntary creditors can require that a debtor provide security for the debt. MLEA is undoubtedly a voluntary creditor in this case.

Here, Plaintiff's theory asks this Court to "pierce the corporate veil" between ARR and RTG, while skipping a critical link in that corporate chain – RTI-Canada, which is a wholly-owned subsidiary of RTG as well as the corporate parent of ARR.  Plaintiffs' attempt to leap

from ARR to RTG is nothing more than a poorly disguised effort to ignore well-settled law recognizing the separate existence of corporate entities. In order to establish liability against ARR, Plaintiff must therefore make two separate showings of complete domination and control: one to pierce the corporate veil between ARR and its parent, RTI-Canada, and yet a second showing to then pierce the corporate veil between RTI-Canada and its parent, RTG. Plaintiff has not pleaded the later and cannot prove the former. Plaintiff has utterly failed to adduce any evidence that RTG or any other corporate entity so dominated and controlled ARR as to make RTG liable under an "alter ego" theory. See Craig v. Charter Consolidated, 843 F.2d 145 (3d Cir. 1988); Nazarwych v. Bell Asbestos, 898 F.2d 13 (3d Cir. 1990).

Nor has Plaintiff alleged any wrongful conduct on the part of RTG relating to Plaintiff's contract with ARR, and, "where a party enters into a contract with a corporation, no action will lie against the shareholders of that corporation individually for a breach of that contract." First Realvest, Inc. v. Avery Builders, 600 A.2d 601, 603 (Pa. Super. 1991) (quoting Loeffler v. McShane, 539 A.2d 876, 879 (Pa. Super. 1988) ("The breach of the contract is the breach of a promise made by the corporation, and not the breach of any promise extended by the corporate officer.")). The reluctance to disregard the corporate form is particularly strong in contract cases, such as this one, where Plaintiff chose the party with which it contracted and could have negotiated guarantees or other security arrangements with the parent corporation. AG Worldwide v. Red Cube Int'l AG, 2002 U.S. Dist. LEXIS 4398, at *9-10 (S.D.N.Y. March 15, 2002); Huard v. Shreveport Pirates, Inc., 147 F.3d 406, 409 (5th Cir. 1998).

The principal issue presented in this case could not be more straightforward. In the fall of 2000, Plaintiff attempted to enter into a turnkey contract with ARR. (See Ex.B, DelGaizo at 28-29, 101, 104). The proposed contract provided that MLEA would design and manufacture a

7

liquid nitrogen manufacturing facility for ARR in Truro, Nova Scotia, and recited the payments that would be due from ARR.  Additionally, Plaintiff, although aware that Recovery Technologies, and possibly Casella, were located up the corporate ladder, chose to contract with ARR.  (Ex. D, Timberlake at 178-79 (admitted that he knew that ARR and Recovery Technologies were wholly-owned subsidiaries of Casella, and that Casella did not guarantee any action by ARR or RTG)).  Further, MLEA accepted the purchase orders from ARR alone on <u>two separate occasions</u>, and did not request a guarantee from RTG.  Id.

At the time MLEA was negotiating the proposed turnkey contract with ARR, a separate company known as RTI-Canada owned one hundred percent of ARR's stock.  (<u>See</u> Ex A, Bohlig at 23).  And at that same time, defendant Recovery Technologies Group, Inc. owned one hundred percent of the stock of RTI-Canada.  Id.  Thus, RTG and Casella were respectively <u>two and three</u> rungs up the corporate ladder from ARR.  Plaintiff voluntarily chose to accept the purchase orders from ARR, and Plaintiff obtained in return no security from RTG, let alone RTI-Canada, to ensure payment of ARR's obligations to it.  (<u>See</u> Exs. O and Q; <u>see also</u> Ex.D, Timberlake at 178-79).  A plaintiff who has voluntarily entered into contractual relations with one company cannot be permitted to hold that company's *parent* or *grandparent* corporations liable without having demonstrated any evidence whatsoever to justify piercing the corporate veil of that corporation.

Pennsylvania law does not permit Plaintiff to hold RTG liable simply because its corporate grandchild, ARR, may have owed money to the Plaintiff.  No facts warrant piercing the corporate veil to reach RTG. Accordingly, this Court should grant RTG's motion for summary judgment and dismiss MLEA's claims against defendant RTG in their entirety.

8

  **C.**  **Plaintiff Has Defaulted On the $150,000 Promissory Notes**

RTG has counterclaimed against Plaintiff for breach of contract based on Plaintiff's default on two promissory notes with a collective face amount of $150,000. The facts of record – **as acknowledged by Plaintiff's President and CEO, Mr. DelGaizo, who himself is an attorney** – indisputably establish that RTG is entitled to summary judgment on its Counterclaim for breach of contract.

  Plaintiff's President, Mr. DelGaizo at his deposition admitted, under oath, the following:

  1.  He is a licensed attorney and a graduate of Temple University School of Law. (Ex. B, DelGaizo at 18).

  2.  In the Summer of 2001, RTG lent $150,000.00 to Plaintiff so that Plaintiff could use that money for various business obligations. (Id. at 66-67).

  3.  Plaintiff received the loan proceeds, which it then deposited into Plaintiff's bank account. (Id. at 67).

  4.  Plaintiff executed two Promissory Notes for $75,000 each and a related Security Agreement. The total principal amount of the Notes was $150,000.00. (Id. at 66-68 & Ex. Z.)

  5.  Under the Notes, Plaintiff promised to pay the sum of $150,000.00 at the interest rate of 8% to RTG "on demand" or in the "Event of Default." (Id.)

  6.  An "Event of Default" is defined as including DelGaizo's failure to deliver a personal guarantee of the Notes to RTG by September 5, 2001. (See Note, Ex. Z).

  7.  DelGaizo failed to provide RTG with his personal guarantee of those Notes. (Ex. B, DelGaizo at 67).

The Notes provided that an "Event of Default" also occurs if Plaintiff "is unable to pay its debts generally as they mature. (See Note, Ex. Z). Plaintiff has been unable to pay its debts generally as they mature. (Ex. C, Menendez at 56-58). Upon an Event of Default, the Notes are due and payable. (See Note, Ex. Z). Plaintiff has not paid back all or any portion of the $150.000.00 that RTG lent to it. (See generally Plaintiff's Reply to RTG's Counterclaim, ¶¶ 6-7).[5] As a result of Plaintiff's default under the Notes, Plaintiff is liable to RTG in the amount of $150,000.00, together with interest in the amount of $28,999.95,[6] together with RTG's counsel fees.

Thus, the undisputed facts of record – **all from the Promissory Notes and the sworn deposition testimony of Plaintiff** – indisputably establish that Plaintiff is in default under the Notes. Consequently, this Court should grant RTG's motion for summary judgment on RTG's Counterclaim; and enter judgment in favor of RTG and against Plaintiff, in the amount of $178,999.95, together with RTG's attorneys fees incurred in connection with this lawsuit.

## VI.  CONCLUSION

For the foregoing reasons, this Court should grant Defendant Recovery Technologies Group, Inc.'s, Motion for Summary Judgment, dismiss Plaintiff's Complaint against it with prejudice in its entirety and find that Plaintiff is liable for damages on RTG's Counterclaim for Plaintiff's default on the $150,000 Promissory Notes.

---

[5] Upon resolution of the liability issue, RTG will present the fact-finder with a bill of costs and fees in connection with its efforts to collect on the Notes.

[6] The Notes were payable as of September 5, 2001, the date on which DelGaizo failed to deliver his personal guarantee. As set forth in the following calculation, the interest due, from September 5, 2001 to today, February 10, 2004 at the stated interest rate of eight percent per annum is $ 28,999.95:  (29/12) x (.08) x ($150,000.00) = $28,999.95.

Dated: February 10, 2003    Respectfully submitted,

                            ECKERT SEAMANS CHERIN
                                      &MELLOTT, LLC

                By:_____
                     John F. O'Riordan, Esquire
                     Heather E. Rennie, Esquire
                     Attorney I.D. Nos. 59311 & 69715
                     1515 Market Street, Ninth Floor
                     Philadelphia, PA  19102
                     (215) 851-8400

                     Attorneys for Defendants Recovery Technologies
                     Group, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MLEA, INC., | : |
|        Plaintiff, | : CIVIL ACTION |
| v. | : No. 02-CV-4393 |
| ATLANTIC RECYCLED RUBBER INC., RECOVERY TECHNOLOGIES GROUP INC., AND CASELLA WASTE SYSTEMS, INC. | : |
|        Defendants. | : |

**ORDER**

AND NOW, this ____ day of February 2004, upon consideration of Defendant Recovery Technologies Group, Inc.'s Motion for Summary Judgment it is hereby ORDERED that such Motion is GRANTED. It is further ORDERED as follows:

1. Judgment is entered in favor of Defendant RTG and against Plaintiff on all counts of Plaintiff's Complaint; and

2. Judgment is entered in favor of Defendant RTG and against Plaintiff on RTG's Counterclaim in the amount of _____.

 

_____, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MLEA, INC., | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | No. 02-CV-4393 |
| | : | |
| ATLANTIC RECYCLED RUBBER INC., RECOVERY TECHNOLOGIES GROUP INC., AND CASELLA WASTE SYSTEMS, INC. | : | |
| | : | |
|     Defendants. | : | |

**DEFENDANT RECOVERY TECHNOLOGIES GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT, OR,
<u>ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT</u>**

Defendant Recovery Technologies Group, Inc. ("RTG"), by and through its undersigned counsel, hereby submits this Motion for Summary Judgment, or, alternatively for partial summary judgment for the reasons set forth in the accompanying Memorandum of Law.

Dated: February 10, 2003

Respectfully submitted,
ECKERT SEAMANS CHERIN
 & MELLOTT, LLC

By: _____
John F. O'Riordan, Esquire
Heather E. Rennie, Esquire
Attorney I.D. Nos. 59311 & 69715
1515 Market Street, Ninth Floor
Philadelphia, PA 19102
(215) 851-8400

Attorneys for Defendant
Recovery Technologies Group, Inc.

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of February, 2004 a true and correct copy of the foregoing Defendant Recovery Technologies Group, Inc.'s Motion for Summary Judgment, or Alternatively for Partial Summary Judgment and accompanying Memorandum of Law in Support was served via first class mail upon the following counsel of record:

>Philip J. Katauskas, Esquire
>Pepper Hamilton LLP
>3000 Two Logan Square
>18th and Arch Streets
>Philadelphia, PA  19103-2799
>
>Attorney for Plaintiff MLEA, Inc.
>
>
>Antoinette R. Stone, Esquire
>Brian J. McCormick, Jr., Esquire
>Buchanan Ingersoll, P.C.
>Eleven Penn Center
>1835 Market Street, 14th Floor
>Philadelphia, PA  19103-2985
>
>Attorneys for Defendant Casella Waste Systems, Inc.

_____
Heather E. Rennie