**EXHIBIT 4**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MLEA, INC., | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : No. 02-CV-4393 |
| ATLANTIC RECYCLED RUBBER INC., RECOVERY TECHNOLOGIES GROUP INC., AND CASELLA WASTE SYSTEMS, INC., | : |
| Defendants. | : |

PLAINTIFF MLEA, INC.'S OBJECTIONS
AND ANSWERS TO DEFENDANT CASELLA WASTE SYSTEMS, INC.'S
FIRST SET OF INTERROGATORIES

Plaintiff, MLEA, Inc., hereby responds to defendant Casella Waste Systems, Inc.'s First Set of Interrogatories as follows:

OBJECTIONS

MLEA makes the following objections to the Defendant's Interrogatories:

(a) MLEA objects to each Interrogatory to the extent that (a) it seeks documents or communications protected against disclosure by the attorney-client privilege or the work product privilege, or which were prepared in anticipation of or litigation or in preparation for trial; (b) it seeks information protected against disclosure as the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of MLEA; (c) it seeks documents that contain confidential commercial information; or (d) it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

(b)     MLEA objects to the Defendant's "Definitions" and "Instructions" to the extent that they impose obligations more stringent than or inconsistent with the Pennsylvania Rules of Civil Procedure.

(c)     Subject to and without waiving the foregoing objections, MLEA responds as follows:

## INTERROGATORIES

1.     Identify and describe with particularity the "express and implied representations" that defendants made, either separately or collectively, to MLEA, Generon, MLEA and/or Messer as referenced in paragraphs 18, 19, 21, and 25 in the Complaint. Pursuant to section 16 of the instructions to these interrogatories, identify each and every document that supports your response to this interrogatory. Identify all persons with knowledge of the facts on which you base your answer to no. 1.

**ANSWER:** From July 2000 (when defendants indicated an urgency to have equipment onsite and operating by December 31, 2000) through May 2002, there was a steady stream of correspondence via phone calls, emails, letters, and meetings reflecting express and implied representations of the defendants' need to have the equipment sent to Truro as soon as possible. Written correspondence, including emails and letters have already been provided to the Defendants. Oral representations are known to Messrs. Timberlake, Menendez, and DelGaizo. See also, documents identified in MLEA's Responses to Casella's Request for Production of Documents. At no time spanning the multitude of communications between MLEA and the Defendants did Defendants ever deny their obligation to pay for the equipment MLEA ordered on their behalf for the Truro Plant. To the contrary, in September 2001 through October 2001, Defendants acknowledged those obligations, and, in fact, did pay one vendor directly (Chart Heat Exchangers). See October 12, 2001 memorandum from Meckert to Timberlake (RTG646-47).

Relevant documents, communications, and events are identified in the following chart:

| Date | Event/Document | Comment |
|---|---|---|
| 9/13/00 | Letter of Intent from RTG to Messer AGS to buy a Liquid N2 plant per Messer offer of 9/13/2000. The N2 plant will be installed at a tire recycling plant in Truro, Nova Scotia, Canada, belonging to Atlantic Recycled Rubber (ARR). | Letter says plant to be on-site and operating in 20 to 24 weeks. RTG is a division of KTI Recycling of Canada. |
| 12/1/00 | ARR letter to Messer, forwarding PO 715258 for a cryogenic tank and other equipment. | Equipment to be returned to Messer if lease does not proceed. |
| 12/6/00 | Letter from RTG to Messer. Replaces the 12/1/00 letter. | Reiterates return of equipment if lease cannot be obtained. |
| 12/11/00 | Letter from Timberlake (Messer) to ARR? re: equipment down payment | Down payments for membranes, compressors, and other major equipment items. Total down payment $298,000. |
| 12/12/00 | Letter from Benison (ARR) to Messer forwarding POs 715260 and 715261. Funding provides down payments on major equipment per Messer letter of 12/11/00. | Equipment items and dollar amounts are identical to Messer 12/11/00 letter. Equipment may be returned to Messer if the lease does not proceed. |
| 1/15/01 | MLEA accepts project responsibility from Messer AGS/MG Generon in signing 3-way letter. | Letter provides details of project transfer. |
| 1/17/01 | Fax from Riordan (RTG) to Benison (ARR) directing that P.O.s 715260 and 71561 be reissued without the stipulation that Messer purchase the equipment back. | expressly supercedes 12/12/00 letter |
| 1/18/01 | Benison (ARR) forwards new letter transmitting POs 715260 and 715261, with no caveat on returning equipment if lease did not proceed, pursuant to RTG's instructions. | Letter states: "This equipment is to be delivered to our site at 185 Mingo Road, Kemptown, Nova Scotia, Canada, as soon as possible." |
| 1/19/01 | 4-way agreement with ARR accepts transfer of the project under the same conditions as existed at that time. Transfer letter signed by MLEA, Messer, MG Generon, and ARR. | Letter also transfers existing POs from Messer to MLEA under conditions. |
| 1/25/01 | Fax of MLEA Invoice MLEA01-00001 | Amount $100,750. Partial payment under PO 715258. Payment was received by MLEA. |
| 1/30/01 | Fax of MLEA Invoice MLEA01-2 | Amount $298,000. Invoice for equipment down payments authorized by POs 715260 and 715261. Invoice has never been paid. |
| Feb/Mar 01 | MLEA conducted engineering and design analyses as necessary to size equipment and prepare purchase specifications. MLEA begins issuing purchase orders for fabrication of equipment. | MLEA pays approximately $83K in equipment down payments in March 2001. Total value of equipment order is approximately $1.6M. |
| 2/27/01 | MLEA letter to R. Kelley (RTG) saying MLEA needs PO for entire plant (not just down payments) plus payments for existing smaller POs. | Kelley later indicates 30 STPD plant may be too big. |
| 3/23/01 | Riordan (RTG) sends a memo to Sergi, Parasteh, Meckert, Anderson, Benison, and Kelley explaining the status of the project, and RTG's intention to continue with the project and lease arrangements. | RTG acknowledges that "It is also important that after reviewing the proposals last November, a decision was made to enter into an agreement with EGS. EGS has proceeding in good faith to provide the liquid nitrogen facility in a timely fashion. Purchase orders have been issued for a portion of the equipment." |
| 3/26/01 | Fax from Petrie (ARR) to Kelley (Casella) transmitting copy of $107,750 check (proof that check was sent on | RTG forwards copies of checks, invoices, invoices and purchase orders to Kelley at Casella |

-3-

| Date | Event/Document | Comment |
|---|---|---|
| | 1/25/01). | |
| 4/6/01 to 4/18/01 | A variety of letters and discussions ensue between MLEA and R. Kelley (RTG/Casella) on 30 STPD versus 15 STPD options for Truro facility. | RTG indicates a 15 STPD plant is all that is needed. Various options are explored. |
| 5/18/01 | A meeting is held at RTG in Guttenberg between RTG (Sergi) and MLEA (DelGaizo and Menendez). RTG states that it will purchase a 30 STPD plant only if MLEA takes excess and sells it at MLEA's own risk. Otherwise, the plant size must be 15 STPD. | MLEA cannot accept the responsibility for selling excess project. A 15 STPD plant is the only viable option, even though that will leave excess equipment that has already been ordered (approximately $400K). |
| 5/30/01 | A contract for a 15 STPD Nitrogen Based Cryogenic System is fully negotiated between MLEA and RTG. The contract is signed by MLEA and forwarded for RTG for signature. | RTG verbally agrees to all terms and conditions but does not/can not sign (allegedly) because of pending sale of RTG. Contract to be signed as soon as sale completed. |
| 7/15/01 | Email from President of RTG (Sergi) re: sale of RTG. | Sergi advises MLEA that the sale of RTG is expected to be signed late that week. MLEA contract will be signed and funding will begin as soon as RTG sale is complete. |
| 8/15/01 | Sale of RTG complete. However RTG still cannot sign contract because of pending application for a low interest loan from the Province of Nova Scotia. Province. Loans are for future projects only and not ongoing projects. | RTG states they will proceed in accordance with the contract even though it is not signed. |
| 8/31/01 | Email from Anderson (RTG) to Timberlake (MLEA) re: loan of $150k | Anderson is relaying a suggestion from Wetzel that RTG should lend MLEA the money on a demand basis to avoid "fussing" with a contract. |
| 8/31/01 | RTG proposes to provide $150K to MLEA in the form of a loan (with promissory note) to cover costs and expenses until the Canadian loan is finalized MLEA drawings for the Truro N2 facility are used as collateral for the notes. Also, MLEA agrees to provide foundation drawings within 2 weeks so that concrete foundations can be poured before winter. | MLEA receives 2 checks, each for $75K and in turn signs 2 promissory notes of $75K each. Notes are due and payable on demand. Plant drawings and foundation drawings are provided as collateral. |
| 8/31/01 | Promissory Note | Terms as above |
| 9/13/01 | RTG informs MLEA that it will pay equipment suppliers directly or through two-party checks (with MLEA as the 2nd party). | See relevant documents that follow |
| 9/14/01 | MLEA delivers foundation drawings for the Truro facility. | MLEA has learned that in accordance with the drawings, the foundations were subsequently poured. |
| 9/14/01 | Letter from Timberlake (MLEA) to Meckert (RTG) re: procedure and organization of payments to suppliers of equipment: forward of draft letter to vendors | confirming 9/13 conversation wherein RTG agreed to accept and pay vendor invoices directed to RTG |
| 9/17/01 | email from Timberlake (MLEA) to Wetzel (RTG) attaching final version of letter to vendors | letter replaces draft of 9/14/01 |
| 9/18/01 | email from Timberlake (MLEA) to Wetzel (RTG) re: selection of invoices | Timberlake seeks clarification from RTG on the order that the invoices should be sent in light of RTG schedule of equipment arrival. |
| 9/20/01 | Email Bob Wetzel (RTG) to George Timberlake (MLEA) re: payment of vendors | In response to Timberlake's request for clarification, Wetzel responds, "Just pick 5 and then do another 5 and so move down the line." |
| 9/20/01 | Timberlake (MLEA) to Wetzel (RTG) forwarding first five invoices for payment pursuant to Wetzel's | RTG paid one invoice (Chart Industries) on Oct. 12, 2001, but no others. |

| Date | Event/Document | Comment |
|---|---|---|
|  | instructions |  |
| 9/24/01 | MLEA letters to five vendors re: payment of invoices | directs vendors to indicate that the balance due is to be paid by RTG, as agreed to by RTG and MLEA |
| 10/1/01 | Letter from Timberlake (MLEA) to Wetzel (RTG) re: selection of second set five vendors | MLEA forwards the list of second vendors for payment by RTG |
| 10/12/01 | Memo from Meckert (RTG) to Timberlake (MLEA) re: RTG's payment of Chart Industries' invoice | RTG pays Chart Industries invoice #432612 ("Sold to: RTG"). RTG requests that P.O.'s be amended to reflect change in ownership ("as [RTG] pays these invoices") of equipment from vendors to RTG (per Sergi's advice). |
| 11/5/01 | Letter from Timberlake (MLEA) to Wetzel (RTG) re: selection of third set of five vendors | MLEA forwards the list of the third set of five vendors for payment by RTG |
| 12/21/01 | Ingersoll-Rand letter requests full payment and shipment by 12/31/01 or order will be cancelled. Cancellation charges will be $177,807. Letter is forwarded to RTG. | No reply from RTG. |
| 12/27/01 | MLEA receives a phone call from R. Cherwony, Attorney for ABB saying suit will be initiated within 30 to 60 days if payment not received. Information passed to RTG | ABB is owed approximately $31K. No reply from RTG [?] |
| 12/27/01 | In a phone call, Pirasteh (RTG Chairman) again states RTG intends to go ahead with the project. He indicates MLEA must work out the details with Meckert. | Meckert is out of the country and not available. |
| 12/28/01 | In an email to RTG attorney (R. Wetzel), MLEA indicates the project is coming apart and an immediate meeting is needed to determine a plan of action. Wetzel indicates he will set up the meeting. | Meeting is subsequently held in January 02 |
| 1/14/02 | Project Status on 1/14/02: Total money paid by RTG to date: $138,750 along with a $150,000 loan to MLEA. Total money paid in down payments by MLEA $83,000. Ingersol Rand order cancelled with $177,807 cancellation fee. Hydro Thrift order cancelled with $16,504 cancellation fee. | Total value of equipment on order but not paid approximately $1.4M. Engineering fees not paid approximately $300K. |
| 1/25/02 | Meeting is held between DelGaizo, Timberlake, Sergi, Kelley at Guttenberg, NJ. RTG states they cannot arrange financing for the project. RTG states they will sign a 10-year nitrogen purchase contract with MLEA for 15-STPD at $.06/lb. With this contract, MLEA will attempt to arrange for lease financing to build and own the plant. | MLEA prepares proposed nitrogen sales contract. |
| 1/31/02 | A second meeting is held in Guttenberg, with the same attendees except Kelley attends via phone call. MLEA presents the proposed nitrogen sales contract. Wetzel, RTG's attorney, promises to review the contract before he leaves for vacation. Other possible options are discussed for using Truro equipment at other RTG sites around the country. | Wetzel doesn't review the contract before his vacation but terms are subsequently negotiated with Wetzel in late February and early March 2002. |
| 2/6/02 | ABB sues MLEA for payment of Truro transformers (value $30,038). | MLEA agrees to pay debt at $3,000 per month until extinguished per stipulation signed 4/17/02. The total amount is paid by 3/03. |
| 3/8/02 | Final terms of the proposed gas-sales contract are negotiated with R. Wetzel. All issues are resolved and the contract is forwarded to RTG for signature. | The gas contract was never signed by RTG. |
| 3/26/02 | Generon IGS sues MLEA for payment for the Membrane Equipment and for the Project Development Fee | Litigation is pending |

MLEA has been sued by PSB in Commonwealth Court, Erie, PA for approximately $40,000 for a dryer unit ordered for Truro. MLEA made a settlement offer to PSB, which was rejected. That case is still pending.

                                                        */s/*
Philip J. Katauskas, Esquire
M. Kendall Brown, Esquire
PEPPER HAMILTON LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103-2799
Attorneys for Defendants
(215) 981-4000

Dated: August 1, 2003

CANCELLATION CHARGES FOR TRURO, NOVA SCOTIA LINC PLANT
As of July 1, 2003

| Invoice No. | Vendor Name | Equipment Description | Original Price | Cancellation Price | Paid by MLEA | Balance Due |
|---|---|---|---|---|---|---|
| UD-202051 | ABB Power T&D | 1000/2500 KVA Transformer | $30,328.00 | $30,328.00 | $30,328.00[1] | None |
| 89905-PPI | ACD | Nitrogen Compander | $192,300.00 | $180,020.00 | $38,460.00 | $141,560.00 |
| 16004915-01 | AMSCO Sales Corp. | Filter/Solenoid/Valves | $15,068.00 | $15,068.00 | None | $15,068.00 |
| B2001-033 | API Basco | Compander Aftercooler | $8,660.00 | $8,660.00 | $5,250.00[2] | $3,410.00 |
| D301587 | Cutler-Hammer | MCCs/Transformers | $107,793.00 | $100,982.40 | $17,871.40[3] | $83,111.00 |
| 20011 | Hydro-Thrift Corporation | Cooling Water/Radiator Pump | $82,522.00 | $16,504.40 | $16,504.40 | None |
| 1133943/944 | Ingersoll-Rand Company | Recycle and Air Compressors | $592,690.00 | $177,807.00[4] | None | $177,807.00 |
| 102707 | MG Generon (now Generon IGS) | Membrane Unit | $475,000.00 | $475,000.00[5] | None[6] | $475,000.00 |
| 2023 | PSB Industries | Nitrogen Dryer Package | $36,207.00 | $41,600.00 | None[7] | $41,600.00 |

---

[1] Per litigation settlement stipulation, MLEA agreed to pay ABB $3000 per month until balance due was extinguished. Final payment made on 3/28/03.

[2] Per agreement with API Basco, MLEA is paying $450/month until balance is extinguished.

[3] Per written agreement with Cutler-Hammer, MLEA pays $2000 per month up to $17,871 for equipment already shipped to MLEA by Cutler-Hammer.

[4] Cancellation charge based upon letter from Ingersoll-Rand.

[5] Based on MLEA estimate of actual value of membrane unit.

[6] Generon IGS has filed suit against MLEA in Court of Common Pleas, Chester County, PA for both the $475,000 membrane and for a project development fee of $342,973. Trial is set for September 22, 2003.

[7] PSB Industries has filed suit against MLEA in Court of Common Pleas, Erie County, PA for payment.

-12-

| | | | | | |
|---|---|---|---|---|---|
| CD2045 | Vilter | Refrigeration Unit | $104,612.00 | $25,848.00[8] | $20,816.40 | $5031.60 |
| 432612 | Chart Industries | Cold Box Heat Exchanger | $33,760.00 | $33,760.00 | $6,752.00 | None[9] |
| 197283 | John S. Connor | Storage of ABB Transformers | NA | NA | $15,175.00 | $5,050.00 |
| 10544 | Main Line Engineering | Design/specifications/drawings | $250,000.00 | $234,054.00 | None | $234,054.00 |
| NA | Engineered Gas Systems | Process design/specifications | $81,864.00 | $81,864.00 | NA | $81,864.00 |
| Total | | | $2,010,804.00 | $1,421,495.80 | $151,157.20 | $1,263,555.60 |
| | | Balance Due plus Paid by MLEA | | | | $1,414,712.80 |

---

[8] This machine was subsequently sold to another customer. The $25,848 cancellation price is the additional cost that was incurred to convert it for the alternative use.

[9] RTG paid $27,008.00 directly to Chart Industries, consequently this equipment has been fully paid.

-13-

## DECLARATION UNDER 28 U.S.C. § 1746(2)

I, Theodore J. DelGaizo, do hereby state under penalty of perjury, that the foregoing MLEA's Answers to Casella Waste System, Inc.'s First Set of Interrogatories are true and correct to the best of my knowledge, information, and belief.

*Theodore J. DelGaizo*

Theodore J. DelGaizo, P.E., Esq.
President and CEO
MLEA, Inc.

## CERTIFICATE OF SERVICE

I, Philip J. Katauskas, hereby certify that on August 1, 2003 a true and correct copy of the foregoing Plaintiff MLEA, Inc.'s Objections and Answers To Defendant Casella Waste Systems, Inc.'s First Set Of Interrogatories Responses to Defendant Casella Waste System, Inc.'s First Set of Requests For Production Of Documents And Things was served via Hand Delivery upon the following:

> Brian J. McCormick, Jr., Esquire
> Buchanan Ingersoll Professional Corporation
> Eleven Penn Center, 14th Floor
> 1835 Market Street
> Philadelphia, PA 19103
>
> John F O'Riordan, Esquire
> Eckert Seamans Cherin & Mellott, LLC
> 1515 Market Street, Ninth Floor
> Philadelphia, PA 19102

_____
Philip J. Katauskas, Esquire