**EXHIBIT 5**

EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MLEA, INC.,

    Plaintiff,

v.

ATLANTIC RECYCLED RUBBER, INC.
RECOVERY TECHNOLOGIES
GROUP, INC., and CASELLA WASTE
SYSTEMS, INC.,

    Defendants.

CIVIL ACTION

NO. 02-CV-4393

### DECLARATION OF ALAN COHEN

I, Alan Cohen, declare as follows pursuant to 28 U.S.C. §1746:

1. From 1991 until September 20, 1999, I was the majority owner of the stock in National Fleet Leasing Corporation, a Pennsylvania corporation ("NFL"), with the principal offices thereof being located at 1500 Ardmore Boulevard, Suite 406, in the County of Allegheny and Commonwealth of Pennsylvania, said NFL arranging for the leasing of both equipment and automobiles.

2. On April 21, 1998, a Stock Purchase Agreement was entered into between NFL, myself, and members of my family with Richard J. Lindner and Jodi S. Lindner, his wife ("Lindner") whereby Lindner purchased from Cohen forty-nine (49) share of the outstanding one hundred (100) shares of common stock in NFL held solely by myself and members of my family which Stock Purchase Agreement contained an option whereby Lindner could purchase the balance of the shares owned by Cohen and

1

members of his family in NFL pursuant to certain terms and conditions, which option was exercised by appropriate Agreement dated September 20, 1999, whereby Lindner became the sole owner of all of the issued and outstanding shares of common stock in NFL; during the pertinent times, I was employed by NFL, Richard Lindner also being employed by NFL and working mainly in the area of automobile leasing. My employment was terminated by Richard Lindner in 2001.

3. I currently reside in Pompano Beach, Florida.

4. Although I do not have access to any of the files and documents presently forming part of the business of NFL, to the best of my knowledge, NFL did not at any time during the above period ever approve, preliminarily approve, or tentatively approve any leasing arrangement involving Messer Gas, Atlantic Recycled Rubber, Inc., MLEA, Inc., EGS, Inc., Recovery Technologies, Inc., or Casella Waste Systems, Inc.

5. In or about the fall of 2000, a person by the name of George Timberlake ("Mr. Timberlake") called me regarding some potential leasing opportunities. I never told or otherwise communicated to Mr. Timberlake that NFL would provide a lease nor did I ever communicate any specific lease terms to Mr. Timberlake.

6. During my time with NFL, NFL utilized lease application forms for all equipment leases. It was my regular practice not to accept any leases for processing until I had a completed leasing application in hand. To the best of my knowledge, at no time did Mr. Timberlake or anyone from Messer Gas, MLEA, Inc., EGS, Inc., Atlantic Recycled Rubber, Inc., Recovery Technologies, Inc., or Casella Waste Systems, Inc. ever provide me with a completed NFL application form so that any consideration could have ever been given to such a lease.

2

7. At no time during my involvement with NFL did NFL ever use any approval committee to review or approve proposed lease transactions. I have reviewed Mr. Timberlake's November 21, 200 letter attached hereto as Exhibit "A", which purports to communicate certain information about NFL and its purported approval practices. The information contained in Mr. Timberlake's letter is false and I certainly never communicated any such information to Mr. Timberlake.

8. I have also come to learn that, as part of the proposed liquid nitrogen plant transaction, there were certain proposed purchase orders for long-lead items that provided that either Messer Gas, EGS, Inc., or MLEA, Inc. would be required to repurchase certain of the items identified in the purchase orders in the event that a lease was not obtained. I have been told that Mr. Timberlake represented that NFL allegedly objected to that "buy-back" provision in the proposed purchase orders. I can state unequivocally that NFL not only did not object to this buy-back concept but that NFL never even was aware of such a buy-back condition. Mr. Timberlake never discussed or otherwise communicated any proposed purchase orders or buy-back conditions with NFL.

9. However, had Mr. Timberlake or any other prospective leasing customer of NFL informed NFL of a contingent buy-back provision in a preliminary purchase order that became effective only if a lease was not consummated, NFL certainly would not have any objection. In any equipment lease transaction, NFL would be the entity that acquired title to the leased equipment during the term of the lease. What might transpire between the lease customer and the manufacturer or supplier prior to NFL's taking title to that equipment or what happened in the even that NFL did not enter into a

3

lease of the equipment would be of no concern to NFL. There is nothing about the proposed buy-back contingency that would in any way impair NFL's ability to take title to and then lease the equipment.

10. NFL would have no reason to object or otherwise comment on the type of contingent buy-back provision that I understand was contemplated as part of the liquid nitrogen plant transaction.

I declare under penalty of perjury that the foregoing is true and correct. Executed on _____, 2004.

_____
ALAN COHEN

S:\SAS\GENERAL\03136\DECLARATION OF ALAN COHEN2.doc

4