IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MLEA, INC., as successor in interest to Engineered Gas Systems, LLP and Main Line Engineering Associates,<br><br>                Plaintiff,<br><br>v.<br><br>ATLANTIC RECYCLED RUBBER INC.<br><br>   and<br><br>RECOVERY TECHNOLOGIES GROUP INC.<br><br>   and<br><br>CASELLA WASTE SYSTEMS, INC.,<br><br>                Defendants. | CIVIL ACTION<br><br>NO. 02 CV 4393 |

## PLAINTIFF'S SUR-REPLY BRIEF IN FURTHER OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

I.    INTRODUCTION

        This case is, at bottom, quite simple: Defendants contracted with Plaintiff MLEA, Inc. ("MLEA"), to purchase equipment and they failed to pay. Nevertheless, Defendants, have moved for summary judgment and spilled much ink trying to justify their clear default. MLEA, however, has already shown that there are numerous issues of fact that must be determined at trial. Nevertheless, Defendants, in their Reply Briefs, have raised new arguments in a last ditch attempt to avoid having to face the music at trial. Specifically, Defendants have (1) proffered a new theory that they were supposedly defrauded by MLEA employee George Timberlake and (2) argued that corporate veil

piercing is not a question of fact to be resolved at trial. Success of the former argument would require this Court to ignore Mr. Timberlake's deposition testimony; the latter would succeed only if the applicable law were ignored. Both arguments are meritless and Defendants' Motions for Summary Judgment should be denied.

II.  ARGUMENT

  A.  There Are Issues of Fact About Each of Mr. Timberlake's Alleged Misrepresentations.

In their opening briefs, Defendants argued that Mr. Timberlake supposedly fraudulently induced them to remove certain buy-back stipulations from the equipment purchase orders Defendants issued to MLEA and, thus, Defendants were allegedly not liable for payment. See Atlantic Recycled Brief at 12. MLEA submits that it thoroughly refuted this contention. See MLEA Brief at 20-22. Realizing that they should be held accountable for their non-payment by a jury, Defendants have crafted a new hypothesis. According to the new theory, Mr. Timberlake purportedly made four separate "misrepresentations" that each allegedly induced Defendants to issue the purchase orders. See Recovery Technologies Brief at 3-8. As shown below, there are triable questions of fact whether Mr. Timberlake ever made any false statements to Defendants.

  1.  There Is an Issue of Fact Whether Mr. Timberlake Lied in his September 13, 2000 Letter.

The first alleged "misrepresentation" made by Mr. Timberlake is that in a letter dated September 13, 2000, he wrote that he had "'arranged a lease through National Fleet Leasing, a company that normally provides this service to our customers.'" Recovery Technologies Reply Brief at 4. Defendants then proffer a series of carefully pruned excerpts from Mr. Timberlake's deposition transcript in an attempt to show that this statement was false. But Defendants fail to quote Mr. Timberlake's specific testimony as to the truth of this representation – with good reason. Here is Mr. Timberlake's testimony about his September 13 letter:

> Q. In this sentence you say we've arranged a lease with National Fleet Leasing at this time. Where is National Fleet Leasing?
>
> A. Pittsburgh.
>
> Q. And had you already arranged a lease with National Fleet Leasing at this time?
>
> A. Yes.

Deposition Transcript of George Timberlake ("Timberlake Dep. Tr.") at 23.3-23.9 (Exh. 1).

Similarly, Mr. Timberlake testified that he had worked with National Fleet Leasing in the past:

> Q. You also say that National Fleet Leasing is the company that normally provides this service to our customers. How many times in the past did you use National Fleet Leasing?
>
> A. This is the first time that I tried to actually set a completed – to arrange a completed lease. Before that I had some other possibilities that I went to them for, primarily having to do with Electrolyzer. They didn't get very far. So this was the only one that I brought into the condition that I could actually say I arranged this to happen.

Timberlake Dep. Tr. at 27.19-28.2.

Defendants make much ado about Mr. Timberlake's use of the term "arranged," as if that word meant that lease financing was guaranteed to the Defendants. Most, if not all, jurors, however, have purchased automobiles or home appliances and the like, based in part on the seller's representation that third-party financing has been "arranged." And most, if not all, jurors know that "arranged" does not mean that financing is guaranteed. They must submit an application and submit to a credit check, at minimum. The seller's use of the term "arranged" merely means that financing is available, <u>if</u> the buyer submits an application which is approved by the financing company. Construing all facts in favor of MLEA, as the Court must do in this posture, see <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986), Mr. Timberlake's testimony at the very least raises an issue of fact whether he made any misrepresentations in his September 13 letter.

-3-

### 2. There Is an Issue of Fact Whether the Purported Second and Third Misrepresentations Were Fraudulent.

The second and third "misrepresentations" allegedly made by Mr. Timberlake relate to Mr. Timberlake's statements that, because of the time that the "lease approval cycle" would take, certain equipment that typically takes an extended period of time to procure should be ordered before approval of any lease. Recovery Technologies Reply Brief at 5-8. Defendants contend that these statements were fraudulent, because Mr. Timberlake did not know the exact amount of time that would be involved in securing approval of the lease. Id. Once more, Defendants' fraud theory is depends on ignoring Mr. Timberlake's testimony. Mr. Timberlake testified as follows:

> Q. In your next sentence you say however, we are still going to have to go through the through the approval cycle, which will take up even more time. What is the approval cycle?
>
> A. After the information would be sent to Mr. Cohen [of National Fleet Leasing], he would have to go through it, and verify it, and then sign off on it.
>
> Q. How did you know that?
>
> A. Because he's told me that before.

Timberlake Dep. Tr. at 153.2-153.10.

Mr. Timberlake testified that he was told by National Fleet Leasing that there would be a lag between receipt of the lease application and final approval. He accordingly urged Defendants to buy equipment with long lead times before lease approval because he had to assume, just to be on the safe side, that the approval cycle could be protracted and could affect Defendants' timetable for completing the project. See Timberlake Dep. Tr. at 154.2-154.5. Construing all facts in favor of MLEA, there is clearly a question of fact whether Mr. Timberlake's statements were evidence of his prudent caution or were fraudulent.

3.  <u>There Is an Issue of Fact Whether Mr. Timberlake Ever Told Defendants that the Leasing Company Objected to the Purchase Order Stipulations.</u>

The final "fraud" allegation is that Mr. Timberlake allegedly told Defendants that National Fleet Leasing demanded the removal of the equipment buy-back stipulations to the purchase orders in dispute. Recovery Technologies Reply Brief at 8. As MLEA has already explained, however, Mr. Timberlake has testified that he never made any such statement. MLEA Brief at 21. Summary judgment is accordingly inappropriate, as the jury must determine whether to believe him or Defendants' witnesses. <u>Id.</u> Moreover, Defendants resort to semantic games to evade a perfectly innocent interpretation of Mr. Timberlake's testimony. Specifically, Defendants argue that Mr. Timberlake's testimony that he "can't recall" making those statements is insufficient to throw his story into doubt, because, implicitly, Defendants assume that the answer "I can't recall" is only capable of one construction – that Mr. Timberlake cannot recall whether he made these representations or not. Recovery Technologies Reply Brief at 9-10. But Defendants ignore the other, and equally plausible way to construe Mr. Timberlake's testimony: that is, he cannot recall making those statements *because he never made them.* Obviously, Mr. Timberlake will not recall saying something that he never said. Construing all facts in MLEA's favor, this is certainly a triable issue of fact.

B.  <u>It Is Inappropriate to Decide Whether to Pierce the Corporate Veil Without a Trial.</u>

As MLEA explained in its opening Brief, Defendants' attempt to escape liability by invoking the defense of the corporate veil is, at a minimum, riddled with factual disputes that must be settled at trial. <u>See</u> MLEA Brief at 22-30. Defendants have now come up with a new argument to avoid responsibility for their non-payment, namely, that they are entitled to summary judgment because the issue of veil piercing involves questions of equity that do not go to a jury, thereby supposedly rendering summary judgment appropriate. Casella Reply Brief at 15-16.

This is yet another red herring. The Court must decide whether there is an issue of fact for trial, whether that trial is a bench trial or, as here, a jury trial. Rule 56 does not distinguish between jury and bench trials. In fact, the case relied on by Defendants for this argument – <u>Advanced Telephone Sys., Inc. v. Com-Net Professional Mobile Radio, LLC</u>, 846 A.2d 1264 (Pa. Super. Ct. 2004) – was an appeal from a <u>bench trial</u> about piercing the corporate veil. <u>Id.</u> at 1268-69. Regardless of who the fact-finder will be, there are clearly issues of fact for trial on Defendants' veil piercing defense. <u>See</u> MLEA Brief at 22-30. Summary judgment is, therefore, inappropriate.

III.   <u>CONCLUSION</u>

Defendants' reply briefs simply bring into high relief the numerous triable issues of fact presented in this case. For the reasons set forth herein and in MLEA's opening Brief, Defendants' Motions for Summary Judgment should be denied.

Respectfully submitted,

_____
Philip J. Katauskas, Esquire
Barak A. Bassman, Esquire
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Attorneys for MLEA, Inc.

Dated:  December 23, 2004

## CERTIFICATE OF SERVICE

I, Barak A. Bassman, hereby certify that on December 23, 2004, a true and correct copy of the foregoing Sur-Reply Brief in Further Opposition to Defendants' Motions for Summary Judgment was served via first class mail upon the following:

John F. O'Riordan
ECKERT, SEAMANS, CHERIN, & MELLOTT LLC
1515 Market Street, Ninth Floor
Philadelphia, PA 19102

Attorneys for Defendants Atlantic Recycled Rubber, Inc. and Recovery Technologies Group, Inc.

Brian J. McCormick
BUCHANAN INGERSOLL PC
1835 Market Street, 14th Floor
Philadelphia, PA 19103

Attorneys for Defendant Casella Waste Systems, Inc.

_____
Barak A. Bassman

Error! Unknown document property name.