IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MLEA, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 02-4393 |
| | : | |
| ATLANTIC RECYCLED RUBBER INC. | : | |
| et al. | : | |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.**                                                                                    **May 18, 2005**

Atlantic Recycled Rubber Inc. and two of its three parent corporations, Casella Inc. and RTG-Canada, ask this Court to grant summary judgment in a contract action brought by MLEA Inc. For the reasons that follow, I grant Casella's motion and deny those of ARR and Recovery Technologies.

**FACTS**[1]

The dispute in this case arises from a plan by Atlantic Recycled Rubber to build a plant to produce liquified nitrogen in Truro, Nova Scotia, because transporting liquefied nitrogen to Truro was prohibitively expensive. Atlantic Recycled Rubber uses liquified nitrogen to freeze pieces of used rubber tires to grind them into crumbs. The rubber crumbs are used in everything from highways to playground mats.

On September 13, 2000, George A. Timberlake, a salesman for Messer AGS, predecessor

---

[1] For the purposes of summary judgment, these are the facts we view in the light most favorable to the non-moving party, MLEA. *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003).

firm to MLEA Inc.,[2] offered to sell Recovery Technologies – Canada[3] a liquid nitrogen system for the Nova Scotia Plant for $4,917,000. The offer was for a "completely installed turnkey liquid nitrogen system." Timberlake letter, September 13, 2000. Timberlake stated Messer had "arranged a lease through National Fleet Leasing." *Id.* The same day James R. Anderson, president of Recovery Technologies, a division of KTI Recycling of Canada, Inc.,[4] wrote to Messer:

> **RE: OFFER OF SEPTEMBER 13, 2000 FOR A TURNKEY LIQUID NITROGEN PLANT FOR OUR FACILITY IN NOVA SCOTIA.**
>
> Please accept this document as a letter of our intent to buy subject plant per the above offer letter and your Messer AGS proposal No. AGS-PR-Nova Scotia -0021-1. Also note that this purchase is contingent on the completion of a leasing agreement and acceptance by Canadian and Local authorities. . . . [B]y sending this letter of intent and initiating work with National Fleet Leasing, it is our understanding that it will be onside and operating in 20 to 24 weeks.

Anderson letter, September 13, 2000.

In November, 2000, Timberlake wrote to G.W. "Bill" Meckert, Director of Engineering, Recovery Technologies Group, "we have had a great deal of trouble getting the information for the lease . . . . In order to meet the requirements of the facility in Nova Scotia we suggest that you purchase the following long lead and critical use items directly from us. When the lease is approved we will than [sic] buy these items back and put them into the lease as has been our intent." Timberlake letter, November 20, 2000. The items listed were a feed breaker, transformer and

---

[2] MLEA is a successor to Main Line Engineering Associates and Engineered Gas Systems, both Pennsylvania partnerships. Engineered Gas Systems is a successor to Messer. On January 19, 2001, Atlantic Recycled Rubber approved the transfer of the Truro contract from Messer to Main Line Engineering Associates.

[3] Recovery Technologies was a subsidiary of a subsidiary of Casella Waste Systems Inc. ARR is a subsidiary of Recovery Technologies.

[4] KTI was at that time a wholly-owned subsidiary of Casella Waste Systems, Inc.

cryogenic storage vessel, totaling $155,000. On December 1, 2000, Atlantic Recycled Rubber Inc. issued Purchase Order 715258 for the feed breaker, transformer and storage vessel for $155,000.

On December 11, 2000 Timberlake again wrote to Meckert of Recovery Technologies Group "we are still having a great deal of trouble getting the information for the lease. . . . [T]he normal lease cycle will jeopardize our April target date." Timberlake letter, December 11, 2000. Timberlake suggested "a second temporary equipment order" for which he requested a down payment of $298,000 for eleven items. On December 12, 2000, Atlantic Recycled Rubber Inc. faxed Purchase Orders 715260 and 715261 to Messer AGS for the eleven itemized pieces of equipment, totaling $298,000. At the request of Timberlake, Recovery Technologies Group directed Atlantic Recycled Rubber to "prepare a new letter transmitting P.O.'s 715260 and 715261 without the stipulation that Messer purchase this equipment back." Steve Benison Fax, January 17, 2001. On January 18, 2001, Benison wrote to Timberlake at Messer "[t]he items mentioned on P.O. 715260 and 715261 are to be purchased by Atlantic Recycled Rubber Inc. This equipment is to be delivered . . . as soon as possible." Benison letter, January 18, 2001.

MLEA then engineered the design, created plans, including foundation plans, and equipment specifications for the Truro liquid nitrogen plant. MLEA values the plans and specifications at $250,000. MLEA claims it ordered $1.6 million worth of equipment for the plant.

On March 9, 2001, Recovery Technologies Group paid MLEA (at that time EGS) $100,750.00, covering the purchase and installation of the storage tank as well as the down payment for the feed breaker and transformer. EGS invoice, January 25, 2001. Atlantic Recycled Rubber received the storage tank but not the breaker or transformer.

MLEA has identified employees of Casella Waste Systems as participating in the

negotiations and the transactions, including, among others, Anderson, President of ARR; Meckert, Director of Engineering for Recovery Technologies, and, Benison, General Manager of ARR.

MLEA's predecessor sent executed agreements to Recovery Technologies and ARR in April and June, 2001, respectively. Neither Recovery Technologies nor ARR signed the agreements. Recovery Technologies loaned MLEA $150,000.00 in August, 2001, for which MLEA executed two promissory notes, secured by the engineering plans and foundation drawings for the plant. MLEA claims the $150,00 payment was not a loan but payment of money owed on the Purchase Orders.

The relationship between the parties devolved. In 2002 MLEA sued ARR, Recovery Technologies and their parent, Casella Waste Systems, Inc., alleging breach of contract, promissory estoppel and unjust enrichment. Recovery Technologies counter-claimed against MLEA for the $150,000 on the promissory notes. All three defendants filed Motions for Summary Judgment in February, 2004. The case was stayed because MLEA went into, and has now emerged from, Chapter 11 bankruptcy, allowing the case to continue.

**DISCUSSION**

A motion for summary judgment will only be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of proving no genuine issue of material fact is in dispute and the court must review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). Once the moving party has carried its initial burden, the nonmoving party must then "come forward with specific facts showing there is a genuine issue for trial." *Matsushita* 475 U.S. at 587 (citing Fed.R.Civ.P. 56(e)). A motion for summary judgment will not be denied

because of the mere existence of some evidence in support of the nonmoving party. The nonmoving party must present sufficient evidence for a jury to reasonably find for it on that issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

Casella argues it is entitled to summary judgment as the great-grandparent corporation of ARR. There is a strong presumption in Pennsylvania[5] against piercing the corporate veil. Any court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception. *Lumax Industries, Inc. v. Aultman,* 669 A.2d 893, 895 (Pa. 1995). Mere ownership of a subsidiary does not justify the imposition of liability on the parent. Veil-piercing is appropriate "when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime," *Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir.1967), or when "the parent so dominated the subsidiary that it had no separate existence." *New Jersey Dep't of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473, 468 A.2d 150, 164 (1983). A court may only pierce the veil in "specific, unusual circumstances," lest it render the theory of limited liability useless. *American Bell Inc. v. Federation of Telephone Workers of Pennsylvania*, 736 F.2d 879, 886 (3d Cir. 1984).

Even when corporations act interchangeably, more evidence is required to pierce the corporate veil. *Publicker Industries, Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1069 (3d Cir. 1979). Courts have refused to pierce the veil even when subsidiary corporations use the trade name of the parent, accept administrative support from the parent, and have a significant economic relationship with the parent. *Pearson v. Component Technology Corp.*, 247 F.3d 471, 485 (3d Cir.

---

[5]MLEA has not disputed Casella's assumption that Pennsylvania law applies. Absent argument on the question this Court will apply Pennsylvania law. *USA Machinery Corp. v. CSC, Ltd.,* 184 F.3d 257, 263 (3d Cir. 1999).

2001). A plaintiff must demonstrate that in all aspects of the business, the two corporations functioned as a single entity. *Id.* Because veil-piercing involves an overlay of fraud, a claim which would pierce the corporate protection must be shown by clear and convincing evidence. *Trustees of Nat. Elevator Industry Pension, Health Benefit and Educational Funds v. Lutyk,* 332 F.3d 188, 194 (3d Cir. 2003).

MLEA claims ARR was a sham corporation and points to its extensive negotiations with Recovery Technologies as evidence . The first time ARR entered the deal was when it issued the three purchase orders at issue here. MLEA's negotiations were, however, with Recovery Technologies, not with Casella. The only link which MLEA makes to Casella is overlapping employees, which is insufficient to remove ARR's corporate protection from Casella. For that reason, we grant Casella's motion for summary judgment.

With regard to Recovery Technologies, however, the analysis is different. The September 2000 letter of acceptance was on Recovery Technology's letterhead as were the letters preceding the issuance of the three purchase orders. That relationship is analogous to the relationship in *Publicker* in which the Third Circuit affirmed the liability of the parent corporation. *Publicker Industries*, 652 F.2d at 344. At the very least, it is sufficiently similar to *Publicker* to survive a motion for summary judgment.

ARR and Recovery Technologies also ask for partial summary judgment on Count II, promissory estoppel, and Count III, unjust enrichment. The fundamental question in this case is whether a contract was formed and, if so, what the contract encompasses. Under Pennsylvania law, to establish that a contract was made, a party must show: (1) both parties manifested an intention to be bound by the terms of the agreement; (2) the terms of the agreement were sufficiently definite to

be enforced; and (3) there was mutuality of consideration. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). Where the facts are in dispute, the question of whether a contract was formed is for the jury to decide. *O'Neill v. ARA Services, Inc.,* 457 F.Supp. 182, 185 (E.D. Pa.1978) *see also Ingrassia Const. Co., Inc. v. Walsh*, 486 A.2d 478, 482 (Pa. Super. 1984).

If a contract was not formed, then MLEA may be able to recover under promissory estoppel or unjust enrichment for the equipment ordered and the plans drawn. *Carlson v. Arnot-Ogden Memorial Hosp*. 918 F.2d 411, 416 (3d Cir. 1990). "Promissory estoppel is an equitable remedy to be implemented only when there is no contract." *Iverson Baking Co. v. Weston Foods, Ltd.,* 874 F.Supp. 96, 102 (E.D. Pa. 1995). Courts have held that breach of contract and promissory estoppel claims may be pleaded in the alternative; if the court finds that a contract exists, the promissory estoppel claim must fail. *Carlson,* 918 F.2d at 416. Promissory estoppel is "invoked in situations where the formal requirements of contract formation have not been satisfied and where justice would be served by enforcing a promise." *Id.*

Unjust enrichment also is an equitable tool. *Fotta v. Trustees of United Mine Workers of America, Health & Retirement Fund of 1974*, 165 F.3d 209, 214 (3d Cir. 1998) (awarding interest on unpaid ERISA benefits to avoid any unjust enrichment at beneficiaries' expense). To sustain a claim of unjust enrichment, the claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider. *Torchia on behalf of Torchia v. Torchia,* 499 A.2d 581 (Pa. Super. 1985). Under Pennsylvania law, "the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Benefit Trust Life Ins. Co. v. Union Nat. Bank,* 776 F.2d 1174, 1177 (3d Cir.1985).

When a contract governs the relationship of the parties, recovery is limited to the measure provided in the contract, because the contract "fixes the value of the services involved." *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987).

In this case, if the jury finds no contract was formed, MLEA has pled sufficient facts regarding the delivery of equipment and plans to survive the Motion for Summary Judgement on the questions of promissory estoppel or unjust enrichment.

Accordingly, I enter the following:

**ORDER**

And now this 18TH day of May, 2005, it is hereby ORDERED that Defendant Casella Waste System's Motion for Summary Judgment (Document 18) is GRANTED. Defendant Atlantic Recycled Rubber Inc's Motion for Summary Judgement (Document 20) and Defendant Recovery Technologies Group Inc.'s Motion for Summary Judgment (Document 21) are DENIED.

The case will be placed inthe October trial pool. A final pre-trial conference will be held October 5, 2005 at 1:30 p.m. in Courtroom TBA (parties to call chambers the day prior).  **Joint** neutral statement of the case, questions for voir dire, points for charge and verdict slip are due no later than September 30, 2005.

BY THE COURT:

Juan R. Sánchez, J.